4 F.3d 987
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Randy Davis HUNT, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Carl Cooper, Defendant-Appellant.
 No. 92-5460, 92-5567.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 1, 1993.
Decided: August 25, 1993.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Rockingham. Norwood Carlton Tilley, Jr., District Judge. (CR-91-270-R)
 Robert Lynn McClellan, Ivey, Ivey, McClellan & Gatton, Greensboro, North Carolina, for Appellant Cooper;
 Ronnie Monroe Mitchell, Harris, Mitchell & Hancox, Fayetteville, North Carolina, for Appellant Hunt.
 Harry L. Hobgood, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 Kevin W. Whiteheart, Ivey, Ivey, McClellan & Gatton, Greensboro, North Carolina, for Appellant Cooper; Kathleen G. Sumner, Harris, Mitchell & Hancox, Fayetteville, North Carolina, for Appellant Hunt.
 Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before WIDENER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 The appellants, Randy Davis Hunt and Carl Cooper, along with Shirley Lou Oxendine Cooper and Daniel Charles Page, were indicted on December 30, 1991, in a four-count indictment. Count one charges the four co-defendants with conspiring between August 4, 1991, and November 26, 1991, to possess one and one-half kilograms of cocaine with the intent to distribute, in violation of 21 U.S.C. Secs. 841(b)(1) and 846. Hunt was also charged in count two with possessing one and one-half kilograms of cocaine with the intent to distribute on November 25, 1991, in violation of 21 U.S.C. Sec. 841(a)(1). Count three charges co-defendant Page with possession with intent to distribute one and one-half kilograms of cocaine on November 26, 1991, in violation of 21 U.S.C. Sec. 841(a)(1). Finally, count four charges Cooper and co-defendant Shirley Cooper with possession with intent to distribute one-half kilogram of cocaine on November 26, 1991, in violation of 21 U.S.C. Sec. 841(a)(1).
 
 
 2
 Co-defendant Page pled guilty and became the principal witness against his co-defendants at trial. Hunt and Cooper were found guilty on all counts after a trial by jury; co-defendant Shirley Cooper was acquitted. Hunt was sentenced to a term of imprisonment of ninety-five months and a term of supervised release of five years. Cooper was sentenced to a term of imprisonment of 262 months and a term of supervised release of five years. On appeal both challenge the sufficiency of the evidence to sustain their convictions; Hunt challenges the admission of extrinsic acts evidence under Rule 404(b) of the Federal Rules of Evidence, the denial of a motion for severance made under Rule 14 of the Federal Rules of Criminal Procedure and the calculation of his criminal history category under the United States Sentencing Guidelines; and Cooper challenges the calculation of his offense level under the United States Sentencing Guidelines.
 
 
 3
 We find no error and affirm the convictions and sentences.
 
 
 4
 * Statement of the Facts
 
 
 5
 In August 1991, Cooper met Page at the automobile race track which Cooper operated in North Carolina. In response to Cooper's inquiry of where he could obtain cocaine, Page volunteered that he might be able to assist Cooper by getting the cocaine from a neighbor. Cooper did not want to pay more than $35,000 a kilogram and offered to give Page $1,000 if he could arrange a purchase. Page then visited Hunt to discuss the drug transaction, and Hunt agreed to provide Page with cocaine at $30,000 a kilogram. During the next three months, Cooper and Page had numerous conversations about cocaine, both in person and by long distance telephone calls, but no transaction was consummated.
 
 
 6
 Cooper was arrested on October 17, 1991, by the Scotland County, North Carolina Sheriff's Department and charged with a cocaine transaction unrelated to his negotiations with Page. In an attempt to reduce the charges, Cooper agreed to cooperate and arrange a purchase of at least two kilograms of cocaine by an undercover officer. Pursuant to the agreement between Cooper and the Scotland County Sheriff's Department, once Cooper had arranged the transaction, officers were to arrest the seller and seize the cocaine. Cooper was expressly forbidden to keep any of the cocaine or to allow a third party to purchase any of the cocaine. Cooper tried unsuccessfully to make three different drug purchases, each time advising the Sheriff's Department of those attempts. At the end of October, Cooper advised the Sheriff's Department that he was not in the process of arranging any drug transactions at that time.
 
 
 7
 On November 1, 1991, Cooper asked Page to arrange a purchase of three and one-half kilograms; however, that transaction did not occur since Hunt would not supply such a large quantity without first being paid. Cooper again contacted Page on November 25, 1991, and asked Page to arrange the purchase of one and one-half kilograms of cocaine. Page called Hunt to obtain the cocaine, and Hunt agreed to deliver the cocaine to Page's house and leave it in Page's truck. At about 7:30 p.m. on November 25, 1991, Hunt and another person knocked at Page's door and told Page that "it's in the seat of your truck." Page then agreed to pay Hunt $45,000 once the cocaine had been sold.
 
 
 8
 The next morning at approximately 6:00 a.m., Page found a Crown Royal bag and a parcel wrapped in brown paper on the seat of his truck. Without inspecting the two packages, he placed them under his seat and drove to his place of employment. At approximately 8:00 a.m., Page called Cooper to arrange delivery of the cocaine. Cooper instructed Page to come to Cooper's home so that he could follow Cooper to where the cocaine was to be delivered.
 
 
 9
 Meanwhile, the Scotland County Sheriff's Department had obtained an arrest warrant for Cooper since he had failed to appear on the pending state cocaine charge and since he had not assisted them in an undercover drug transaction as agreed. When they arrived at Cooper's residence at 8:15 a.m. on November 26, 1991, in an unmarked police car to serve the arrest warrant, Cooper was backing out of one side of his circular driveway and Page was parked in his black pickup truck at the other end of the driveway. Although Cooper had not notified the Sheriff's Department that he was arranging such a drug transaction, Cooper told them that he was working on a drug deal for them at that very moment with the driver of the black truck. In response to questions by the officers, Cooper stated that Page did not have the cocaine with him since it had been hidden "beside the road somewhere." Cooper did not tell the officers the quantity of cocaine Page was offering to sell. Cooper told the officers that he would call in approximately thirty minutes to inform them of the details of the drug transaction.
 
 
 10
 Once the officers had left, Page followed Cooper to the residence of Cooper's sister-in-law, Shirley Cooper. When Shirley Cooper arrived, she and Cooper went into a back room. Then Cooper returned to the front of the house and directed Page to get the one-half kilogram from the truck and hand it to Shirley Cooper through the back door. Page retrieved the one-half kilogram contained in the Royal Crown bag from the truck and gave it to Shirley Cooper in exchange for a paper sack. As Page was leaving, he heard Cooper tell Shirley Cooper to remove the Crown Royal bag from her house. Without examining the contents of the paper sack, Page wrapped it in his coat and placed the coat on the dash board of his truck. Page then planned to return the unsold kilogram to Hunt and to give Hunt the $15,000 he assumed he had received from Shirley Cooper. At 9:00 a.m. Cooper called the Sheriff's Department from Shirley Cooper's residence and said that the driver of the black pickup truck would be driving toward the factory where he worked and would have a kilogram of cocaine with him. Cooper did not mention the one-half kilogram Shirley Cooper had just purchased. About five minutes later, Cooper again called the Sheriff's Department and reiterated the information contained in his first call. The officers stopped Page, arrested him, and found $14,500 in the brown paper bag inside Page's coat and the remaining kilogram of cocaine on the floor. When interviewed at the time of his arrest, Page provided the officers all the details surrounding the drug transaction, including the sale of the one-half kilogram to Shirley Cooper. The officers then drove to Shirley Cooper's house in an attempt to seize the one-half kilogram. On the way to Shirley Cooper's house, the officers saw Cooper hurriedly leaving a store in an attempt to evade them. A detective followed Cooper and saw him drive into the back yard of someone else's residence. Cooper attempted to explain his presence at the residence by claiming he was trying to purchase a motor that had been advertised for sale. A search of Cooper's vehicle did not reveal the one-half kilogram of cocaine.
 
 
 11
 The officers arrived at Shirley Cooper's house at approximately 12:00 p.m., but the officers were still unable to locate the one-half kilogram of cocaine. That night, an agent of the North Carolina State Bureau of Investigation attempted, with Page's cooperation, to record a telephone call from Page to Hunt. Page told Hunt in the conversation that he had sold some of the cocaine and asked what Hunt wanted him to do with the money. Hunt stated that he would visit Page and collect the money after completing some errands. Later that evening, the officers took Page to Hunt's residence in an attempt to get Hunt to take the money, but Hunt was not at home. During an interview of Cooper that evening, Cooper admitted that he had known that Page had one and one-half kilograms of cocaine with him when Page was at Cooper's house that morning.
 
 
 12
 At trial, long distance telephone records were introduced which reflect that many calls had been made from Cooper to Page and from Page to Cooper during the time of the conspiracy. Additionally, the toll records reflected four calls from Shirley Cooper's residence to Page during the relevant time period and two calls from that same residence to the Sheriff's Department on the morning of November 26. Since Page and Hunt were on the same telephone exchange, all calls between them were local and were not reflected on their long distance telephone records.
 
 II
 Sufficiency of the Evidence
 
 13
 Both appellants challenge the sufficiency of the evidence. Hunt claims that the evidence is insufficient to prove that he was a participant in a drug conspiracy or that he possessed the one and one-half kilograms of cocaine, since the government's entire case was based upon the uncorroborated testimony of the cooperating witness, Page. Hunt especially challenges the sufficiency of the evidence against him concerning the one-half kilogram of cocaine, since there is no evidence that Page ever saw the one-half kilogram and since the cocaine itself was never seized or introduced into evidence. Cooper also claims that Page was not a credible witness and contends that, since Shirley Cooper was acquitted on the charges surrounding the one-half kilogram of cocaine, he could not then be found guilty of conspiring to possess or possessing the one-half kilogram.
 
 
 14
 We review the sufficiency of the evidence under the familiar standard of Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), which inquires whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt," and requires us in applying the standard to construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced.
 
 
 15
 Id.
 
 
 16
 United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991).
 
 
 17
 Both Hunt and Cooper were found guilty of violating 21 U.S.C. Sec. 846 by conspiring to possess cocaine with the intent to distribute. In a conspiracy case, the government must prove that there was an agreement between two or more persons to do something which the law prohibits and the defendant's willful joinder in that agreement. United States v. Campbell, 980 F.2d 245, 249 (4th Cir. 1992). Cooper and Hunt were also convicted, pursuant to 21 U.S.C.Sec. 841(a)(1), for possession of cocaine with intent to distribute. Possession of large quantities of an illegal drug, as in the present case, can be evidence that a defendant intended to distribute the drug. United States v. Roberts, 881 F.2d 95, 99 (4th Cir. 1989). Possession may be either actual or constructive, and constructive possession"exists when defendant exercises, or has the power to exercise, dominion and control over the item." United States v. Zandi, 769 F.2d 229, 234 (4th Cir. 1985).
 
 
 18
 The evidence at trial showed that Cooper initiated the conspiracy by ordering cocaine from Page. When contacted by Page, Hunt agreed to furnish cocaine at $30,000 a kilogram and, thus, willingly joined the conspiracy. On November 25, 1991, Hunt supplied Page with one and one-half kilograms of cocaine by placing the cocaine on the front seat of Page's truck, expecting $45,000 in return. Although there is no evidence that Cooper handled the one-half kilogram of cocaine, he exercised dominion and control over it by arranging for its sale to Shirley Cooper. Finally, Cooper completed the conspiracy by exceeding his arrangement with the Scotland County Sheriff's Department when he had Page deliver the one-half kilogram of cocaine to Shirley Cooper.*
 
 
 19
 The fact that Shirley Cooper was acquitted on both the conspiracy and substantive possession charges relating to the one-half kilogram of cocaine does not dictate that Cooper's convictions which only deal with the one-half kilogram of cocaine should be overturned. The United States Supreme Court has long held that inconsistent verdicts in criminal cases must be accepted and that a defendant cannot challenge his conviction because it was not consistent with a jury's acquittal on another count. United States v. Powell, 469 U.S. 57, 6465 (1984); United States v. Thomas, 900 F.2d 37, 40 (4th Cir. 1990).
 
 
 20
 The principal argument of both Hunt and Cooper on appeal is that Page was not a credible witness given his agreement with the government to cooperate in hopes of reducing his sentence. However, an appellate court does not "weigh the evidence or review the credibility of witnesses in resolving the issue of substantial evidence." United States v. Arrington, 719 F.2d 701, 704 (4th Cir.), cert. denied, 465 U.S. 1028 (1983). Furthermore, the testimony of Page was corroborated. The kilogram supplied by Hunt was found in Page's truck, along with the $14,500 received by Page for the one-half kilogram of cocaine. Telephone toll records revealed numerous conversations between Cooper and Page and established Cooper's presence at Shirley Cooper's house right after the one-half kilogram sale as evidenced by the two calls from Shirley Cooper's number to the Sheriff's Department. Hunt's involvement was corroborated by the telephone conversation from Page to Hunt after Page's arrest wherein Hunt agreed to meet Page at a later time to collect the money for the cocaine Page had sold.
 
 
 21
 Cooper's own actions further corroborated the testimony of Page. Although required by his agreement with the Scotland County Sheriff's Department, Cooper never advised the department of his November 26, 1991 deal with Page. When surprised by the officers who had come to arrest Cooper and confronted him in his driveway, Cooper lied and said Page did not have the cocaine with him at that time. Although Cooper did not tell the Sheriff's Department about the onehalf kilogram of cocaine when he tipped them off about Page, Cooper later admitted that he knew Page had one and one-half kilograms of cocaine with him earlier that morning at Cooper's house. Finally, Cooper attempted to flee by hiding behind a residence once he realized the officers were going to Shirley Cooper's house. The government, therefore, produced sufficient evidence to support all of the convictions.
 
 III
 
 22
 Admissibility of Evidence of Hunt's Involvement in Prior Drug Transaction
 
 
 23
 Hunt has argued that the district court erred in allowing Robert Bullard to testify that he purchased an ounce of cocaine from Hunt in October 1990. Hunt argues that this evidence should be excluded pursuant to Rule 403 of the Federal Rules of Evidence as unfairly prejudicial since Hunt has only been charged with this drug transaction, not convicted. The government has contended that this evidence of the cocaine sale to Bullard showed that Hunt acted knowingly and intentionally in the conspiracy for which he was being tried.
 
 
 24
 Admissibility of extrinsic acts evidence is governed by Rule 404(b) of the Federal Rules of Evidence, which provides that:
 
 
 25
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 26
 When a defendant like Hunt directly places the elements of knowledge and intent in issue, any evidence of a prior drug transaction is offered for a proper purpose under Rule 404(b). United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991). Furthermore, Rule 404(b) does not require proof of conviction of the extrinsic act before such evidence is admissible. United States v. Marion, 977 F.2d 1284, 1288 (8th Cir. 1992).
 
 
 27
 We review the district court's decision to allow the evidence under Rule 404(b) for abuse of discretion and apply a"broadly deferential standard" to the district court's Rule 403 determination. In admitting Bullard's testimony, the district court instructed the jury that they were to consider this evidence solely for the purpose of determining whether Hunt acted with the requisite knowledge and intent necessary for him to be convicted of either conspiracy or possession of cocaine with the intent to distribute. The district court further instructed the jury that they could not consider Bullard's testimony "to show that Mr. Hunt is a bad person or that he has a propensity to commit criminal offenses." Under the circumstances of the instant case and in light of the limiting instruction, we conclude that the district court did not abuse its discretion in permitting the jury to hear evidence about Hunt's prior sale of an ounce of cocaine to Bullard in October 1990.
 
 IV
 Hunt's Motion to Sever
 
 28
 Hunt next argues that the district court erred in denying his motion to sever made pursuant to Rule 14 of the Federal Rules of Criminal Procedure. Hunt claims that the evidence against him was insufficient to convict him of conspiracy or possession with intent to distribute, and that but for the strong evidence against Cooper he would not have been convicted had he been tried separately. The general rule is that defendants who are charged in the same conspiracy indictment should be ordinarily tried together. United States v. Chorman, 910 F.2d 102, 114 (4th Cir. 1990). The decision to deny severance is left to the sound discretion of the trial court; abuse of discretion only occurs if the denial of the severance deprived Hunt of a fair trial or resulted in a miscarriage of justice. Id. The fact that the evidence against Cooper was stronger than the evidence against Hunt does not justify severance. United States v. Hargrove, 647 F.2d 411, 415 (4th Cir. 1981). Given our ruling that there is sufficient evidence to convict Hunt of conspiracy and possession with the intent to distribute cocaine, the denial of the motion to sever was well within the district court's discretion. Moreover, it appears that the jury was fully capable of sifting the evidence as it applied to each defendant given the acquittal of Shirley Cooper. See Chorman, 910 F.2d at 114; United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987), cert. denied, 485 U.S. 934 (1988) ("no prejudice exists if the jury could make individual guilt determinations by following the court's cautionary instructions, appraising the independent evidence against each defendant.").
 
 V
 
 29
 Determination of Hunt's Criminal History Category Pursuant to the United States Sentencing Guidelines
 
 
 30
 Hunt's final argument on appeal is that the court erred in calculating his criminal history category pursuant to the United States Sentencing Guidelines. Hunt contends that his sentence in a 1987 assault conviction was unconstitutional since it exceeded the statutory maximum penalty prescribed under North Carolina law; therefore, this conviction is void and should not be included in the calculation of his criminal history category. In North Carolina, simple assault is punishable by thirty days and/or a fine of $50. N.C.G.S.Sec. 14-33(a). Hunt was sentenced to imprisonment for a term of 181 days, which was suspended for two years, and ordered to pay a fine and court costs.
 
 
 31
 The North Carolina court documents concerning Hunt's assault conviction revealed that he was charged with assaulting Etiska Harrell by choking and threatening her and that he pled guilty after waiving representation of counsel. The district court found that Hunt actually had been convicted of assault on a female, with the wrong block on the arrest warrant having been checked. A misdemeanor assault on a female is punishable in North Carolina by a fine or imprisonment for not more than two years, or both. N.C.G.S. Sec. 14-33(b). We do not find clear error in this factual determination made by the district court. See United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir. 1989). Furthermore, we find that had this North Carolina assault conviction been void, Hunt's sentence would have been the same. The district court stated on the record that it would have attributed the equivalent of one criminal history point for that incident since, without it, Hunt's criminal history category would not have adequately reflected the seriousness of his past criminal conduct.
 
 VI
 
 32
 Calculation of Cooper's Relevant Conduct Pursuant to the United States Sentencing Guidelines
 
 
 33
 Cooper's final argument on appeal concerns the calculation of the amount of cocaine attributable to him. The district court found Cooper's base offense level to be 26, pursuant to U.S.S.G. Sec. 2D1.1a(3), as a result of committing an offense involving more than 500 grams but less than two kilograms of cocaine. Cooper argues that the correct calculation should have been less than 500 grams of cocaine since the negotiated sale price for the cocaine was $30,000 a kilogram and Page was arrested with only $14,500 and since the supposedly one kilogram of cocaine seized from Page actually only weighed 989.6 grams. Therefore, Cooper reasons that Page must have sold Shirley Cooper less than one-half kilogram of cocaine.
 
 
 34
 Findings of fact necessary to the calculation of a defendant's offense level must be made by a preponderance of the evidence. United States v. Urrego-Linares, 879 F.2d 1234, 1238 (4th Cir.), cert. denied, 493 U.S. 943 (1989). The district court's factual findings as to the amount of drugs attributable to a defendant are reviewed for clear error. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). Commentary to section 2D1.4 of the United States Sentencing Guidelines provides that: "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance."
 
 
 35
 We find that the district court did not clearly err in finding at least 500 grams of cocaine constituted relevant conduct. Cooper ordered one and one-half kilograms of cocaine from Page on November 25, 1991, and directed Page to give Shirley Cooper one-half kilogram on November 26. There is absolutely no evidence that Shirley Cooper intended to buy anything less than 500 grams of cocaine, even though she may have short-changed Page by $500.
 
 
 36
 For the reasons stated herein, the convictions and sentences of both appellants are affirmed.
 
 AFFIRMED
 
 
 *
 At trial and at sentencing, the government conceded Cooper had immunity for the kilogram recovered, but not for the one-half kilogram he diverted to Shirley Cooper