**UNITED STATES of America, Appellee,**

v.

**Daniel Joseph PAUL, Appellant.**

No. 86–5128.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1986.

Decided Jan. 29, 1987.

Terrence J. Fleming, Minneapolis, Minn., for appellant.

Joan N. Ericksen, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before DONALD R. ROSS and JOHN R. GIBSON, Circuit Judges, and WILLIAM C. HANSON, Senior District Judge.[*]

HANSON, Senior District Judge.

Paul was convicted on two counts of having knowingly and intentionally distributed cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a). He asserts that there was insufficient evidence to support the verdict, and contends that the district court improperly admitted evidence of his prior drug dealings and testimony of an absent coconspirator. We affirm the decision of the district court.[1]

## I.

Paul first asserts that there was insufficient evidence to support the guilty verdict. It is well settled that in considering the sufficiency of the evidence, the evidence need not exclude every reasonable hypothesis other than guilt; it must simply be sufficient to convince a jury beyond a reasonable doubt that the defendant is guilty. *United States v. LaGuardia*, 774 F.2d 317, 319 (8th Cir.1985).

Paul contends that the government's evidence did little more than establish his guilt by association, thus inviting the jury to infer his guilt from his presence at the scene of the July 1 and July 17 drug transactions. He argues that, under *Unit-*

ed States v. Frol, 518 F.2d 1134 (8th Cir. 1975), and *United States v. Holder*, 560 F.2d 953 (8th Cir.1977), the government has failed to present sufficient direct evidence tying him to the illegal transactions. We do not agree. The evidence in this case, when considered as a whole, supports the jury verdict.

Paul had begun selling one gram quantities of cocaine to James Weidert in January 1985. In April he began selling Weidert larger quantities of cocaine and in May he introduced Weidert to Gary Johnson, stating that Weidert could purchase cocaine from either Johnson or Paul. Weidert was given the beeper numbers for both Johnson and Paul, and called either number when he needed additional cocaine. Between May and July 17, 1985, Weidert dealt with Johnson and Paul as partners in the drug business, and could receive cocaine from one and pay the other.

Sergeant John Boulger of the Minneapolis Police Department was conducting surveillance of Weidert's apartment building on July 1, 1985, when he observed two men on motorcycles drive up. The smaller of the two men, whom he later identified as Paul, was carrying a small package consistent in size with a small amount of cocaine. Once inside Weidert's apartment, one of the two men, apparently Johnson, delivered cocaine to Weidert. After Johnson and Paul left the apartment building, Weidert flicked the lights in his apartment signalling to Officer Vande Steeg and another man who were waiting to enter and purchase the cocaine.

On July 17, Vande Steeg called Weidert and told him he wished to purchase four ounces of cocaine. Weidert made a beeper call to either Johnson or Paul and one of them returned his call. Weidert then called Vande Steeg back ten minutes later and told him he could obtain four ounces of cocaine at $2,100 per ounce.

[*] The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The HONORABLE HARRY H. MacLAUGHLIN, United States District Judge for the District of Minnesota.

When Weidert went to Johnson's apartment to pick up the cocaine, Johnson was unable to locate it due to the fact that he had recently moved into the apartment, and had to enlist Paul's assistance. After Johnson and Paul eventually located the cocaine, Weidert then discussed payment with both men and left the apartment with the cocaine and a small amount of inositol. Weidert returned to his apartment to meet Vande Steeg.

When Vande Steeg arrived at Weidert's apartment, Weidert showed him the two ounces of cocaine and Vande Steeg asked if he could get two more ounces. Weidert left the room and made another beeper call to Paul and Johnson. At this point Weidert was arrested.

On July 18, Vande Steeg accompanied Weidert to Johnson's apartment where Weidert introduced Vande Steeg as a cocaine purchaser. Vande Steeg told Johnson he wanted to purchase another ounce of cocaine. Johnson told Vande Steeg that he owed him $3,625 for the cocaine purchased the previous day. When Vande Steeg complained about the quality of the cocaine he had purchased two or three weeks before, Johnson replied that he did not understand. Vande Steeg said, "Remember when you and Danny came over on your motorcycles to Jimmy's place." Johnson replied, "Oh, yeah, I know what you mean there, but I got that one from somebody else." Vande Steeg then asked Johnson how long it would take to get an ounce of cocaine, and Johnson replied, "All I have to do is make a call." After a short conversation, Vande Steeg told Johnson to "go give Danny a call. Find out how long it's going to be." At that point Johnson dialed a number and said he needed another "O–Z"; he hung up and said, "Danny will be here within the hour." Johnson was then arrested. Paul did not arrive at Weidert's apartment.

Paul asserts that his mere presence at the July 1 and July 17 transactions does not establish his guilt. However, given the ongoing relationship between Paul and Weidert from January to July 1985, the fact that Paul introduced Johnson to Weidert as his partner in the cocaine buisiness, and that on July 18 Johnson agreed to call "Danny" to obtain additional cocaine, the jury could reasonably conclude that Paul was more than a passive observer at the July 1 and July 17 drug transactions.

## II.

■ Paul next asserts that, under Fed.R. Evid. 404(b), the court erred in admitting evidence of his prior drug transactions with Weidert. Rule 404(b) "admits evidence of crimes or acts relevant to any issue in the trial, unless it tends to prove only criminal disposition." *United States v. Simon*, 767 F.2d 524, 526 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 545, 88 L.Ed.2d 474 (1986) (quoting *United States v. DeLuna*, 763 F.2d 897 (8th Cir.1985)). Other crimes or bad act evidence is admissible under Rule 404(b) if:

(1) the evidence of the bad act must be admissible on a material issue raised; (2) the evidence must be similar in kind and reasonably close to the charge at trial; (3) the evidence of the other crime or bad act must be clear and convincing; and (4) the probative value of the evidence must not be outweighed by its prejudice.

*United States v. Marshall*, 683 F.2d 1212, 1215 (8th Cir.1982). The trial court has broad discretion under this rule, and will be reversed only when the evidence clearly has no bearing upon any of the issues involved. *United States v. DeLuna*, 763 F.2d 897, 913 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985).

It is clear that the "bad acts" evidence in this case was relevant to the issues of intent, identity, and as evidence of a continuing conspiracy between Paul and Johnson. Because the government must necessarily have shown intent to distribute, under 21 U.S.C. § 841(a)(1), intent was a material issue before the court. In addition, once evidence was introduced suggesting that Weidert could not recall whether he had dealt specifically with Paul on July 1 or July 17, the issue of identity was a

material issue before the court. It was therefore important for Weidert to testify as to his earlier drug transactions with Paul beginning in January 1985. Furthermore, the evidence of Paul's past drug transactions with Weidert tended to show a larger continuing plan by demonstrating that during 1985 Paul had expanded his cocaine dealings and formed a partnership with Johnson; thus, the "bad acts" evidence was admissible to show intent, identity, and evidence of a larger continuing plan.

It is also clear that the prior drug transactions between Weidert and Paul were similar to the July 1 and July 17 transactions, and therefore aided the government in establishing the growing conspiracy between Weidert and Johnson. Moreover, the fact that the prior transactions occurred no more than six months prior to the charged crimes is sufficiently close in time to eliminate any possible abuse of discretion by the court in admitting the bad acts evidence. *See Marshall,* 683 F.2d at 1215–16.

Evidence of Paul's prior drug dealings with Weidert was relevant to show that, although Weidert was unsure whom he had contacted to obtain drugs, he knew from his prior dealings that Paul sold cocaine and was Johnson's partner. Thus, this evidence is probative of the ongoing partnership in the distribution of drugs between Johnson and Paul, and substantiates the inference that Paul's presence at the July 1 and July 17 transactions was as a coconspirator and not as a passive observer.

The government proved by clear and convincing evidence that Paul had committed the prior bad acts. The evidence of Weidert's past cocaine purchases from Paul and of Paul's forming a partnership with Johnson is not vague, uncertain, or speculative. *United States v. Gustafson,* 728 F.2d 1078, 1083 (8th Cir.), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). Therefore, on the basis of the evidence in the record, we cannot say that the district court abused its discretion in finding proof of the prior bad acts to be clear and con-

vincing. *United States v. Estabrook,* 774 F.2d 284, 288 (8th Cir.1985).

Nor is the prejudicial impact of this evidence outweighed by its probative value. Because Paul's theory of the case was that he had no role in the July 1 and July 17 drug transactions, the evidence of his prior drug dealings was necessary to the government's proving his presence as a coconspirator. Moreover, in advance of trial the government submitted a memorandum in which it spelled out the basis for the necessity of presenting the bad act evidence in this case. This obviated any possibility that the district court would be forced to speculate after the fact as to the prejudicial effect of this evidence. *See* 2 Weinstein & M. Berger, *Weinstein's Evidence* § 404[19] (1986). Thus, we believe that the district court did not abuse its discretion in finding that the prejudicial impact of the other acts evidence did not outweigh its probative value.

### III.

Finally, Paul maintains that the district court erred in admitting the testimony of Officer Vande Steeg who repeated the out-of-court statements made by Johnson prior to his arrest on July 18, 1985. Although Johnson was present in court at the time of the trial, he refused to testify and was thus "unavailable."

Hearsay is admissible pursuant to Rule 801(d)(2)(E) if the government showed that a conspiracy existed, that the defendant and declarant were both members of the conspiracy, and that the declaration was made during the course of and in furtherance of the conspiracy. *United States v. Lewis,* 759 F.2d 1316, 1338–39 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); *United States v. Bell,* 573 F.2d 1040, 1042 (8th Cir.1978).

The trial court followed the procedure set out in *United States v. Bell* for determining whether a coconspirator's statements are admissible under Rule 801(d)(2)(E):

If the prosecutor propounds a question which requires a witness to recount an out-of-court declaration of an alleged coconspirator, the court, upon a timely and appropriate objection by the defendant, may conditionally admit the statement. At the same time, the court should, on the record, caution the parties (a) that the statement is being admitted subject to defendant's objection; (b) that the government will be required to prove by a preponderance of the independent evidence that the statement was made by a coconspirator during the course and in furtherance of the conspiracy; (c) that at the conclusion of all the evidence the court will make an explicit determination for the record regarding the admissibility of the statement; and (d) that if the court determines that the government has failed to carry the burden delineated in (b) above, the court will, upon appropriate motion, declare a mistrial unless a cautionary instruction to the jury to disregard the statement would suffice to cure any prejudice.

573 F.2d at 1044. At the close of the evidence, the court found that the government had proven by a preponderance of the independent evidence that the statements offered under the coconspirators' exception to the hearsay rule would be admissible under Rule 801(d)(2)(E). In addition, the court included an instruction to the jury that Paul's mere presence at the scene of the crimes was not enough to prove his guilt.

The evidence in this case showed by a preponderance that a conspiracy existed between Paul and Johnson to distribute cocaine. They met at least one customer together, shared profits, and entrusted one another with cocaine and money. Furthermore, the evidence demonstrates that Johnson's statements to Officer Vande Steeg were in furtherance of the conspiracy. Johnson understood why he was receiving over $3,000 in cash, and was willing to place a telephone call to "Danny" at Vande Steeg's request. We conclude that the trial court did not abuse its discretion in finding that the government had proven

by a preponderance of the independent evidence that the statements offered were admissible under the coconspirators' exception to the hearsay rule.

For all of the foregoing reasons, we affirm the district court.