UNITED STATES of America,
Appellee/Cross–Appellant,

v.

Carolyn Faye MARION, a/k/a Marian
Ward, Appellant/Cross–Appellee.

Nos. 91–3215, 91–3392.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1992.

Decided Oct. 22, 1992.

Jerry Straus, Minneapolis, Minn., argued, for appellant.

Douglas R. Peterson, Minneapolis, Minn., argued, for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Carolyn Faye Marion was convicted pursuant to 18 U.S.C. § 3146(a)(2) for knowingly failing to surrender for service of sentence on her underlying social security fraud conviction. She raises two *trial* issues on appeal: (1) sufficiency of the evidence and (2) alleged district court error in admitting certain evidence against her dur-

ing the trial. The government cross appeals and raises two *sentencing* issues: (1) alleged district court error in concluding that United States Sentencing Guideline (U.S.S.G.) § 2J1.6 as amended (Nov. 1990) does not comply with Congress' statutory directive and (2) alleged district court error in underestimating its authority to consider certain evidence as a basis for departing upward from the guideline. We affirm the conviction, but vacate the sentence and remand for resentencing.

## I. BACKGROUND

On July 28, 1988, Carolyn Faye Marion was arrested for misusing a social security number. She pled guilty on September 9, 1988, and the district court[1] released her on bond. On December 9, 1988, the district court sentenced her to a five month term of imprisonment and then granted her the privilege of voluntary surrender. Before releasing her, the district court specifically warned Marion about the consequences if she failed to report on time to the designated facility. On December 12, 1988, Marion requested permission to travel to Memphis, Tennessee, and stay with her mother until authorities informed her to report to prison. The district court granted Marion's request provided that she report as directed to the United States Marshal's office and the United States Probation Office's pretrial services division in Memphis. She agreed.

Once in Memphis, however, Marion failed to report to any of the designated officials. Because of her delinquency, the government asked the district court on December 22, 1988, to issue a bench warrant for Marion's arrest. The district court denied the government's request because Marion's reporting date was January 3, 1989.

Marion failed to report on January 3, 1989, to the designated facility in Roseville, Minnesota. On the following day, the district court issued a bench warrant for her arrest. Although she never surrendered, Marion made three phone calls to authorities in Minnesota during the next three days. First, on January 4, 1989, she called Pretrial Services Officer Cindy Peterson. After being told that Marion was located in Chicago, Officer Peterson testified that she specifically told Marion that she was violating her voluntary surrender obligation and that she "needed to surrender to the Marshals in Chicago or return [to Minneapolis] immediately and turn herself in." Trial Transcript (Tr.) at 77–78. A day later, Marion called the Marshal's office in Minneapolis and indicated that she was located in Memphis. United States Deputy Marshal Kelly Sullivan testified that Marion was specifically told that a warrant had been issued for her arrest and that she should turn herself in immediately at the Marshal's office in Memphis. Tr. at 126. Finally, on January 6, 1989, Marion called the Marshal's office in Minneapolis again and indicated that she had begun to look for employment in the Memphis area. Tr. at 127. Once again, a deputy marshal advised Marion to turn herself in and once again she refused to voluntarily surrender. Tr. at 127–28.

After numerous unsuccessful attempts to locate Marion, a grand jury indicted her on May 2, 1989, for failing to surrender for service of her sentence on the underlying social security fraud conviction pursuant to 18 U.S.C. § 3146(a)(2). Marion was eventually located nearly two years later on March 18, 1991, in West Palm Beach, Florida, and arrested. She was tried by a jury before a different district judge and convicted on July 3, 1991. During the preparation of the subsequent presentence investigation (PSI) report, the probation officer discovered that Marion had an extensive previously undisclosed and undiscovered criminal background. In fact, Marion had been arrested numerous times under numerous aliases. Because of this newly discovered evidence, the second district court,[2] in resolving the issues raised by the defen-

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. In order to avoid confusion, the district court that tried and sentenced Marion for violating 18 U.S.C. § 3146(a)(2) will be referred to as the "second district court." The decisions and rulings of the second district court are the sole basis for this appeal.

dant's objections to the PSI, increased Marion's criminal history category from a category I, which was the calculation used by Judge Doty during the sentence on her underlying social security fraud conviction, to a category VI. The court then concluded as a matter of law that the Sentencing Guidelines were inapplicable, and proceeded to impose a nonguideline sentence of 18 months of imprisonment to be served consecutively to the five month term of imprisonment previously imposed by Judge Doty for the social security fraud conviction. Both parties appeal.

## II. DISCUSSION

### A. Insufficiency of the Evidence

 Marion first argues that the evidence at trial was insufficient to prove the essential element of *knowingly* failing to surrender for service of sentence. *See* 18 U.S.C. § 3146. She contends that she made several telephone calls to the United States Marshal's office in Memphis, Tennessee, talked only to a receptionist each time, and was told that she did not have to turn herself in to authorities. According to Marion's understanding, the authorities would contact her if and when she was to begin serving her sentence. Because she says the authorities never contacted her, she claims that she did not *knowingly* fail to surrender.

In reviewing a claim based on the sufficiency of the evidence, we must view the evidence in the light most favorable to the jury's verdict. *United States v. Vitale,* 728 F.2d 1090, 1094 (8th Cir.), *cert. denied,* 469 U.S. 825, 105 S.Ct. 103, 83 L.Ed.2d 48 (1984). "[T]he evidence need not exclude every reasonable hypothesis other than guilt; it must simply be sufficient to convince a jury beyond a reasonable doubt that the defendant is guilty." *United States v. Paul,* 810 F.2d 774, 775 (8th Cir. 1987). Therefore, "[a] jury verdict will be reversed on appeal only if a reasonable jury 'must have entertained a reasonable doubt' as to the defendant's guilt." *United States v. Roberts,* 848 F.2d 906, 908 (8th Cir.) (quoting *United States v. Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986)), *cert. de-*

*nied,* 488 U.S. 931, 109 S.Ct. 322, 102 L.Ed.2d 340 (1988).

Two of the government's witnesses, District of Minnesota Pretrial Services Officer Peterson and United States Deputy Marshal Kelly Sullivan, disagreed with Marion's version of the facts. They testified that during their three conversations with Marion between January 4-6, 1989, both of them specifically informed Marion that she was in violation of her agreement to voluntarily surrender and that she must turn herself in immediately to a Marshal's office or report to Roseville, Minnesota. Tr. 77-79, 125-28. Marion testified that she telephoned the Memphis authorities on four different occasions in December 1989, and was told, in effect, to simply continue her lifestyle. Tr. at 162. Two other government witnesses, Pretrial Services Officer Wanda Pinkston and United States Deputy Marshal Leslie Boatwright, both of Memphis, however, testified that no records exist of Marion's alleged phone calls. Tr. at 101, 117. After viewing the evidence most favorably to the government, we conclude that the evidence is sufficient to support the jury's verdict. *See United States v. Wells,* 721 F.2d 1160, 1161 (8th Cir.1983).

### B. Admissibility of Evidence

 Marion next argues that the trial judge erred in admitting evidence of her prior failure to appear for trial in Las Vegas, Nevada. She claims that this evidence should have been excluded because she was never *convicted* for failing to appear in court in Las Vegas. We disagree.

 Under Federal Rule of Evidence 404(b), evidence of other bad acts or crimes is not admissible to prove character or propensity, but may be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Rule 404(b) is a rule of inclusion. *United States v. Mothershed,* 859 F.2d 585, 589 (8th Cir.1988). "The trial court has broad discretion under [Rule 404(b)], and will be reversed only when the evidence 'clearly has no bearing upon any of the issues involved.'" *United*

*States v. DeLuna,* 763 F.2d 897, 913 (8th Cir.) (quoting *United States v. Wagoner,* 713 F.2d 1371, 1375 (8th Cir.1983)), *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). "To be admissible under Rule 404(b), the evidence must be: (1) relevant to a material issue; (2) proved by a preponderance of the evidence;[3] (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." *United States v. Campbell,* 937 F.2d 404, 406 (8th Cir. 1991) (footnote added).

First, evidence that Marion had failed to appear for court in Las Vegas in 1985 and that she had subsequently fled the State of Nevada was relevant to show her intent in failing to appear in January 1989 at Roseville, Minnesota, to begin serving her term of imprisonment. Moreover, this evidence was relevant to counter Marion's argument that she failed to surrender because of a mistake or an accident. *See United States v. Shannon,* 836 F.2d 1125, 1129 (8th Cir.), *cert. denied,* 486 U.S. 1058, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988).

■ Second, the government proved Marion's prior failure to appear conduct by a preponderance of the evidence. The government introduced a certified copy of the bench warrant issued on October 16, 1985, for Marion's arrest for failing to appear in Clark County, Las Vegas, Nevada. The government also produced a fingerprint expert to verify that Marion was the person referred to in the Nevada bench warrant. Marion did not dispute this evidence at trial.

■ Third, the evidence is clearly probative on the issues of intent and absence of mistake. We find that the probative value of this evidence outweighs the prejudicial effect to Marion and therefore is admissible for this limited purpose.

Fourth, the evidence is also remarkably similar in kind to the crime charged in this case. In both cases Marion failed to appear at a designated place on a designated date. Although her Las Vegas arrest warrant was issued in 1985, the warrant is still outstanding.

■ Finally, where evidence is admitted under Rule 404(b), the district court should specify the purpose for admitting the evidence and should "instruct the jury on the limited purpose for which [the evidence] may be considered." *United States v. Westbrook,* 896 F.2d 330, 334 (8th Cir. 1990). At the time the evidence of Marion's prior failure to appear in the Las Vegas court was admitted, the trial judge properly instructed the jury that this evidence could be used only for the limited purpose of determining the issues of intent and absence of mistake. Additionally, the trial judge reiterated in his final instructions to the jury the limited purpose for which the evidence could be considered.

For these reasons, we hold that the trial court did not abuse its discretion in admitting the evidence of Marion's previous failure to appear in the Las Vegas court for the limited purpose of proving intent and absence of mistake. *See DeLuna,* 763 F.2d at 913.

■ Marion's additional argument that this evidence should have been excluded because she was not *convicted* of this previous conduct is meritless. Rule 404(b) does not require proof of conviction. We note that Marion failed to cite any controlling authority for this proposition.

In summary, we affirm Marion's conviction.

### C. Sentencing Guideline § 2J1.6

■ During Marion's sentencing for willfully failing to report for service of sentence on her underlying social security fraud conviction, the second district court concluded that U.S.S.G. § 2J1.6 as amend-

---

**3.** Marion argues that the evidence must be proved by clear and convincing evidence. That standard was the law prior to 1988. The Supreme Court ruled, however, that this element of a Rule 404(b) analysis was satisfied if there was "sufficient evidence to support a finding by the jury that the defendant committed the [prior acts]." *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).

ed (Nov.1990)[4] failed to distinguish between the *actual* sentence imposed for the underlying offense and the *potential* sentence which might have been imposed for the underlying offense. Sentencing Transcript at 29. The second district court followed the rationale of *United States v. Lee*, 887 F.2d 888 (8th Cir.1989), and concluded that § 2J1.6 as amended failed to reasonably comply with Congress' statutory directive. On this basis, the second district court discarded the guidelines and sentenced Marion to an 18 month term of imprisonment to be served consecutively to Marion's five month term of imprisonment based on her underlying social security fraud conviction. *See* 18 U.S.C. § 3146(b)(2) (a term of imprisonment imposed for a failure to appear offense runs consecutively to any other term of imprisonment imposed).

The government argues that the second district court erred in not applying the sentencing guidelines after concluding that U.S.S.G. § 2J1.6 as amended (Nov. 1990) does not comply with Congress' statutory directive. The government contends that § 2J1.6 as amended sufficiently complies with Congress' statutory mandate and, therefore, should have been applied by the second district court in Marion's sentencing.

■ We review de novo the issues of whether the United States Sentencing Commission (Sentencing Commission) adequately considered all of the factors articulated by Congress and whether the particular guideline reasonably complies with Congress' statutory directive. *United States v. Galloway*, 976 F.2d 414, at 419, (8th Cir.1992). If the guideline is sufficiently reasonable in light of Congress' directive, we must uphold the guideline. *Id.* at 421.

In *Lee*, this court concluded that U.S.S.G. § 2J1.6 (Nov. 1988) did not reasonably comply with Congress' statutory directive because the guideline failed to differentiate between a defendant who fails to appear to serve a sentence already imposed and a defendant who fails to appear pending trial, appeal, or sentencing. Section 2J1.6 (Nov. 1988) provided for a base offense level of six, which was then increased according to the maximum statutory penalty for the underlying offense. This court invalidated § 2J1.6 (Nov. 1988) "insofar as it dealt with a defendant's failure to appear after a sentence has been imposed that is but a fraction of the maximum." *Lee*, 887 F.2d at 892.

After reviewing the amended version of § 2J1.6 (Nov. 1990), we conclude that the issues confronting the *Lee* court have been adequately addressed. We also conclude that the Sentencing Commission complied with Congress' statutory directive.

The Sentencing Commission amended § 2J1.6 in order to "provide[ ] greater differentiation in the guideline offense levels for the various types of conduct covered by this guideline." *See* U.S.S.G.App. G at C.180 (Nov. 1990). The Sentencing Commission accomplished this goal. Section 2J1.6 as amended now distinguishes between a defendant who fails to report to serve a sentence already imposed and a

---

**4.** *Failure to Appear by Defendant*, Section 2J1.6 as amended, provides:

 (a) Base Offense Level:

 (1) 11, if the offense constituted a failure to report for service of sentence; or

 (2) 6, otherwise.

 (b) Specific Offense Characteristics:

 (1) If the base offense level is determined under subsection (a)(1), and the defendant—

 (A) voluntarily surrendered within 96 hours of the time he was originally scheduled to report, decrease by 5 levels; or

 (B) was ordered to report to a community corrections center, community treatment center, "halfway house," or similar facility, and subdivision (A) above does not apply, decrease by 2 levels;

 Provided, however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more.

 (2) If the base offense level is determined under subsection (a)(2), and the underlying offense is—

 (A) punishable by death or imprisonment for a term of fifteen years or more, increase by 9 levels; or

 (B) punishable by a term of imprisonment of five years or more, but less than fifteen years, increase by 6 levels; or

 (C) a felony punishable by a term of imprisonment of less than five years, increase by 3 levels.

defendant who fails to appear for the trial, appeal, or sentencing. While the offense level for failure to appear cases is still computed based on the maximum statutory penalty for the underlying offense, the offense level for failure to report cases is not. Instead, § 2J1.6 as amended differentiates between the failure to report cases on the basis of the amount of time the defendant is delinquent in reporting and on the type of facility to which the sentenced defendant is to report. Since those persons sentenced to report to community treatment centers and halfway houses are relatively low level offenders (offense level 10 and below) who have generally been sentenced to "but a fraction of the statutory maximum," the specific offense characteristic adjustment of § 2J1.6(b)(1)(B), which calls for a two level reduction, addresses one of the concerns we expressed in *Lee*. This distinction indicates that the Sentencing Commission considered the factors listed by Congress. In our opinion, § 2J1.6 as amended (Nov. 1990) sufficiently complies with Congress' statutory directive, *see* 18 U.S.C. §§ 3146, 3553 (1990); 28 U.S.C. §§ 991, 994 (1990), and therefore, must be upheld. The second district court erred in discarding the guideline.

### D. Denial of Government's "Upward Departure Motion"

Because we are remanding this case for resentencing, we need not decide whether the government's allegation of trial court error in "not departing upward" was correct.

The government argued at sentencing that the defendant obstructed justice by failing to disclose her prior criminal record during the first pre-sentence investigation and asked the second district court to depart upward and increase her sentence by 16 months. The court declined to do so.

Because in its view the court was not constrained by the sentencing guidelines, it is incorrect to analyze any alleged trial court error in not imposing a more severe sentence than it did as a failure "to depart upwards." "Departure" is a term of art with a developing meaning that should be

reserved for sentencing guideline cases. Any failure to impose a more severe nonguideline sentence than what was imposed (but which sentence is still within the statutory maximum) can be reviewed by an appellate court, if at all, only under an abuse of discretion standard. The second district court's sentencing order shows it understood it had the discretion to increase the nonguideline sentence that it would be imposing, but in the exercise of that discretion declined to do so because it would in effect "re-sentence [Marion] for a prior offense." Sentencing Order (Order) at 4. The court indicated that it did, however, "consider her failure to disclose in the context of fashioning an appropriate sentence for this case." *Id.* The same thing is true for the government's contention about the defendant's prior criminal history and prior unconvicted criminal conduct. In imposing its nonguideline sentence, the second district court said: "The Court, while not working within the guidelines calculations, has considered defendant's criminal history, in its entirety, including her unconvicted criminal behavior." *Id.; see also* sentencing transcript at 32–34.

At resentencing, the government is free to argue as it does here that the defendant's conduct during the sentencing phase in the underlying social security fraud case before Judge Doty is so intertwined with this failure to appear offense that departure under U.S.S.G. § 5K2.0 is warranted by these alleged facts.

With respect to the defendant's prior criminal history, the second district court did determine that the defendant's criminal history category was a VI under the guidelines. If there is other unscored criminal conduct, it can be addressed by a departure motion pursuant to U.S.S.G. § 4A1.3.

Because the second district court did not determine these sentencing enhancement issues under the rubric of the U.S.S.G.'s departure guidelines and policy statements, there is no real issue for us to review. We will not initially substitute our view for what is quintessentially the domain of trial court discretion when the trial court has yet to make its findings and exercise its

discretion under the guidelines. Nothing we have said here should be construed as indicating one way or another what result the district court should reach, except that it must, at resentencing, apply the guidelines.

## III. CONCLUSION

Accordingly, we affirm Marion's conviction, but vacate the sentence and remand for resentencing in accordance with this opinion.