UNITED STATES of America, Appellee,

v.

**Connie GOODWIN, Appellant.**

No. 94–3982.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1995.

Decided Dec. 21, 1995.

Estelle C. Mannis, Oakland, California, argued, for appellant.

Stephen F. Simon, Minneapolis, Minnesota, argued (Jeffrey S. Paulsen, on the brief), for appellee.

Before BEAM, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

On June 27, 1994, Connie Goodwin pleaded guilty to one count of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). On November 18, 1994, the district court sentenced Goodwin to 57 months incarceration. Goodwin's sentence included a 51-month downward departure from the guideline sentence as well as a three-month downward departure from the statutory minimum sentence of five years, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), in recognition of Goodwin's substantial assistance to law enforcement agencies. On appeal, Goodwin argues that the court abused its discretion in sentencing him. He also asserts that his conviction and sentence subjected him to double jeopardy because of an earlier civil forfeiture of $1,500 and a cellular telephone. We affirm.

## BACKGROUND

Connie Goodwin was a California-based distributor of methamphetamine. On March 18, 1993, law enforcement agents intercepted a drug shipment sent to Minnesota by Goodwin via Federal Express. The package was addressed to Dawn Oxley and apparently intended for Laddawn Brousseau, one of Oxley's neighbors. Brousseau began cooperating with authorities and participated in a controlled buy from Goodwin in California on February 3, 1994.

After his arrest, Goodwin also began cooperating with authorities. Pursuant to a plea

agreement with the government, Goodwin pleaded guilty to one count of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) based on the drugs recovered by authorities from the controlled buy between Brousseau and Goodwin. At sentencing, the government dismissed the remaining seven counts of the indictment against Goodwin. The plea agreement specifically provided:

> The defendant understands that he will be held accountable for the drugs involved in the dismissed counts for sentencing purposes as relevant conduct. The government's position is that the total drug quantity for which the defendant is responsible is at least 351 grams of methamphetamine (actual) plus approximately 23 ounces of methamphetamine (mixture). The defendant reserves the right to challenge the total drug quantity, and the court will resolve any disputes.

Plea Agreement ¶ 3 (footnote omitted). The plea agreement anticipated a base offense level of 34. In his objections to the presentence report, Goodwin challenged the calculation of drug quantity for purposes of establishing his base offense level.[1] Goodwin acknowledged responsibility for the drugs seized by authorities from the March 18, 1993 package addressed to Dawn Oxley and from the February 3, 1994 controlled buy in California. He objected, however, to the inclusion of unseized drug quantities that Brousseau told agents she had received from Goodwin on prior occasions, claiming that Brousseau's statements did not constitute sufficiently reliable proof.

At sentencing, the court accepted the offense-level calculations in the plea agreement and the presentence report.[2] After reducing the base offense level of 34 by three levels because of Goodwin's acceptance of responsibility, the district court determined that the

---

1. Specifically, Goodwin objected on two separate but related grounds: (1) the total quantity of methamphetamine attributed to him as relevant conduct included unseized drugs; and (2) the gross amount of methamphetamine mixture should not have been converted to methamphetamine (actual).

2. The court took only one exception to the recommendations of the presentence report. In the report, the probation officer recommended a two-level upward adjustment based on Goodwin's leadership role in the offense. Both Goodwin and the government objected to that portion of the report. Ultimately, the court declined to include the two-level enhancement in Goodwin's sentence. Sentencing Tr. at 3.

total offense level was 31. With a criminal history score of I, the district court noted, the normal imprisonment range would have been 108 to 135 months. At that point the following exchange occurred:

> THE COURT: And I believe with that we bring the situation down to a disagreement at this point strictly to that of how much of a downward departure is appropriate to grant. If I am wrong in that statement, let me know.
>
> [GOVERNMENT]: I think that is probably correct, Your Honor.
>
> THE COURT: Okay. With that, then, Counsel, do either of you have any comments to make?
>
> [DEFENSE COUNSEL]: If I may, Your Honor?
>
> THE COURT: Certainly....
>
> ....
>
> DEFENSE COUNSEL: [W]e have narrowed the issues, Judge. The question here is the government has made their motion pursuant to 5k1.1 [sic] and pursuant to 18 U.S.C. 3553(e), which permits this court to depart below the guidelines, but also the mandatory minimum.

Sentencing Tr. at 3–4. Defense counsel did not mention Goodwin's objections to the calculation of the drug quantity attributable to him; rather, he proceeded to present an argument in favor of a substantial downward departure. Before imposing the final sentence, the court inquired: "Counsel, are there any additional matters to come to the court's attention before sentence is imposed?" Both lawyers responded with, "nothing." The court adopted the government's recommendation for a six-level departure and sentenced Goodwin to a term of imprisonment of 57 months.

On appeal, Goodwin argues that the court abused its discretion in sentencing him. He also contends that his conviction and sentence subjected him to double jeopardy because of an earlier civil forfeiture of $1,500 and a cellular telephone.

## DISCUSSION

### A. Sentencing

Goodwin challenges his sentence on three grounds: (1) the court failed to hold an evidentiary hearing based on Goodwin's objections to the presentence report; (2) the court did not consider the "safety valve" provision of the Violent Crime Control Act, 18 U.S.C. § 3553(f); and (3) imposition of the 57–month sentence created an unwarranted disparity in punishment between Goodwin and Brousseau.

■ First, the court was not required to hold an evidentiary hearing in this case before imposition of sentence. Although Rule 32(c)(1) of the Federal Rules of Criminal Procedure requires a sentencing court to rule on any unresolved objections to the presentence report, the court determined that Goodwin waived any outstanding objections he may have had to the presentence report. After sentencing, the court issued a Statement of Reasons for Imposing Sentence in which it noted, "[a]lthough the Defendant has objected to certain portions of the PSI, he does not pursue those objections in light of the Government's Motion for Downward Departure." The court specifically gave Goodwin's lawyer at least two chances to raise any issues he had in addition to the extent of the downward departure. Goodwin completely failed to pursue his objections, much less request an evidentiary hearing as required by Local Rule 83.10(f). The court did not abuse its discretion by determining drug quantity attributable to Goodwin without an evidentiary hearing.

■ Second, Goodwin cannot look to the "safety valve" provision of the Violent Crime Control Act, 18 U.S.C. § 3553(f), for any additional relief. For certain drug offenses for which the mandatory minimum sentence is greater than the applicable guideline sentence, the "safety valve" provision directs the court to impose sentence in accordance with the applicable guideline without regard to any statutory minimum if the court finds that the defendant meets specific mitigating criteria. In this case, however, the court departed below both the mandatory minimum of five years and the applicable guideline range.

The "safety valve" provision affords Goodwin no further sentencing benefit.

▋ Third, Goodwin's claim that his 57–month sentence creates unwarranted disparity between his punishment and that of Brousseau lacks merit. Brousseau was sentenced by another court to 18 months incarceration after she pleaded guilty to one count of conspiracy to possess with intent to distribute methamphetamine. Both Goodwin and Brousseau cooperated with law enforcement agencies and received downward departures at sentencing for their respective cooperation. In essence, Goodwin now challenges the relative extent of the courts' downward departures. We have repeatedly held that the extent of a downward departure is unreviewable on appeal. *United States v. Karam*, 37 F.3d 1280, 1284 (8th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995); *United States v. Albers,* 961 F.2d 710, 712 (8th Cir.1992) (citing *United States v. Left Hand Bull,* 901 F.2d 647 (8th Cir.1990)).

## B. Double Jeopardy

▋ Goodwin argues on appeal that his conviction violates the double jeopardy clause because of an earlier civil forfeiture of $1,500 and a cellular telephone. Goodwin did not raise this claim in the district court. Double jeopardy claims may not be raised for the first time on appeal. *United States v. Garrett,* 961 F.2d 743, 748 (8th Cir.1992). Goodwin's double jeopardy claim, therefore, is not properly before this court, and we do not discuss its merits.