_____

No. 96-1731
_____

United States of America,          *
                                   *
          Appellee,                *   Appeal from the United States
                                   *   District Court for the
     v.                            *   District of Nebraska.
                                   *
Clarence Robinson,                 *
                                   *
          Appellant.               *

_____

          Submitted:  October 25, 1996

            Filed:  April 4, 1997
_____

Before BOWMAN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BOWMAN, Circuit Judge.


     A jury found Clarence Robinson guilty of conspiring to distribute and
possess with intent to distribute cocaine base, in violation of 21 U.S.C.
§§ 841(a)(1), 846 (1994).  The District Court[1] sentenced Robinson to life
in prison.  Robinson appeals both his conviction and his sentence.  We
affirm.


                                   I.

     The following statement of facts is based on the evidence presented
at Robinson's trial, viewed as it must be in the light most favorable to
the verdict.  From approximately August 1, 1993 through January 31, 1994,
a number of individuals, including Robinson, conspired to transport cocaine
base from Bakersfield,

_____

     [1]The Honorable Lyle E. Strom, United States District Judge for
the District of Nebraska.

California, to Omaha for distribution. The drug conspiracy was uncovered by Omaha police during the investigation of an apparent double homicide. While searching the car in which the two bodies were discovered, police located a telephone number that was eventually traced to an Omaha apartment. When officers arrived at that residence, two individuals, one of them Darrell Duke, who was later charged as a coconspirator with Robinson, were inside. The officers, after observing marijuana in the apartment, procured a search warrant for the premises and eventually recovered more than $11,000 in currency. Through subsequent investigation, the police discovered that one of the homicide victims was associated with a group of individuals who transported cocaine base from Bakersfield and distributed the drugs in Omaha.

The participants in this conspiracy purchased powder cocaine in the Bakersfield area, "rocking up" the powder into cocaine base before transporting it to Omaha for distribution. The amount of cocaine base transported into Omaha increased with each shipment as the conspirators reinvested their drug proceeds into the purchase of ever greater amounts of powder cocaine. The conspirators arranged a total of ten cocaine base shipments into Omaha, culminating in the final eighty-three ounce shipment in which Robinson was personally involved. The drugs were moved into Omaha by private vehicle or by couriers who used public transportation. All couriers were met at Omaha terminals and driven to "safe" houses by conspirators who had traveled to Omaha by separate carrier or who were temporarily living in Omaha.

Once the cocaine base reached Omaha, it was distributed to local dealers and eventually resold by these local dealers in Omaha. Proceeds collected from local dealers were bundled and transported back to Bakersfield. On at least one occasion, the conspirators chemically treated the drug proceeds to avoid canine detection during the transportation of the funds by public carrier.

During the course of the conspiracy, Brian Duke was primarily responsible for purchasing the powder cocaine, Wamai Smith was primarily responsible for making transportation arrangements, and Thomas Cotton was primarily responsible for distributing the cocaine base once it reached Omaha. Robinson's involvement in the conspiracy began when Duke approached him about joining the enterprise. Duke had become suspicious of Cotton because Cotton had launched his own drug distribution enterprise in Omaha while continuing his involvement with Duke's enterprise. Duke testified that he intended for Robinson to oversee Cotton's activities in Omaha and to report any disloyalty. Eventually, Duke testified, Robinson was to take over Cotton's distribution duties in Omaha. Robinson was thereafter introduced to all facets of the conspiracy, from processing the powder cocaine in Bakersfield, through transporting and distributing the drugs, to packaging and delivering the drug proceeds back to Bakersfield.

Robinson personally assisted in "rocking up" and packaging the final eighty-three ounce shipment of cocaine base destined for delivery in Omaha. He traveled to Omaha to observe Cotton's activities and, while in Omaha, observed the packaging and chemical treatment of the drug proceeds for shipment back to Bakersfield. Smith testified that he paid Robinson $1,000 for accompanying Cotton to Omaha and for packaging a portion of the cocaine base. Cotton testified that Robinson held some of the drug proceeds to avoid a total loss of profits if Cotton were apprehended.

## II.

Robinson, Brian Duke, Darrell Duke, Thomas Cotton, Wamai Smith, and other individuals were indicted by a grand jury in Nebraska on drug trafficking charges. Robinson, arrested in California, was transferred to Nebraska to face charges. Each of Robinson's coconspirators pled guilty. Robinson, however, entered

a plea of not guilty, was tried by a jury, and was convicted of the charged crime.

In this direct appeal, Robinson argues that the evidence is insufficient to support his conviction; that the District Court abused its discretion by admitting evidence of "other crimes" under Rule 404(b); that plain error occurred when the prosecutor made improper comments during the government's closing argument; and that the District Court erred in computing his sentence.

## III.

We turn first to Robinson's argument that the evidence presented at trial was insufficient to support his conviction. The government offered the testimony of two Bakersfield police officers who described Robinson's prior felony drug arrests in order to establish Robinson's motive, knowledge, and intent with respect to the charged conspiracy. The government also offered the testimony of a number of Robinson's coconspirators establishing that Robinson had participated in weighing and packaging cocaine base destined for sale in Omaha; that Robinson traveled to Omaha to monitor and to report on the activities of a fellow conspirator and to become familiar with the distribution activities in Omaha; that he was present while the participants bundled money earned from the sale of cocaine base in Omaha, spraying the money with chemicals to avoid canine detection during delivery of the money to California; and that he concealed a portion of the drug proceeds during travel with a fellow conspirator to prevent a total monetary loss in the event one of them was stopped by police. Robinson claims that the testimony of his coconspirators should have been disregarded as incredible. As always, it is "the sole province of the jury to weigh the credibility of a witness" and we will not disturb such credibility determinations. United States v. Martinez, 958 F.2d 217, 218 (8th Cir. 1992). We conclude that the evidence presented at trial was sufficient to support Robinson's conviction.

In a more particularized challenge to the sufficiency of the evidence, Robinson argues that his conviction must be reversed because the government failed to prove the existence of a single conspiracy as charged in the indictment, and instead proved the existence of multiple conspiracies. In support of this argument, Robinson claims that Thomas Cotton abandoned the conspiracy to embark on a separate cocaine distribution operation. Because Robinson raises this issue for the first time on appeal, our standard of review is plain error. Reversal under this standard is warranted only if "(1) the court committed an error; (2) the error is clear under current law; and (3) the error affects [the defendant's] substantial rights." United States v. Turner, No. 96-1857, slip op. at 8 (8th Cir. Jan. 13, 1997). However, even if there has been plain error affecting the defendant's substantial rights, whether this Court will notice the error is a matter of discretion, and we reverse for plain error only where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 736 (1993); United States v. Griggs, 71 F.3d 276, 279 (8th Cir. 1995).

Whether a single conspiracy or multiple conspiracies exists is a question of fact for the jury to decide. See United States v. Holt, 969 F.2d 685, 687 (8th Cir. 1992). Simply because the participants in a conspiracy change over time does not prove the existence of multiple conspiracies. Rather, "where the remaining conspirators continue to act in furtherance of the conspiracy to distribute drugs, the conspiracy continues." See United States v. Jenkins, 78 F.3d 1283, 1288 (8th Cir. 1996). The government presented sufficient evidence for a jury to conclude that the conspirators, including Robinson, continued to pursue their joint, primary objective to distribute cocaine base in Omaha despite some change in personnel. Given the weight of the evidence establishing a continuing conspiracy, we find that Robinson has failed to show any error, plain or otherwise.

## IV.

Robinson argues that the District Court improperly admitted into evidence the testimony of the two police officers who described Robinson's prior felony drug arrests. The District Court conducted a hearing outside the presence of the jury and determined that this evidence was admissible to show Robinson's knowledge, intent, motive, and lack of mistake. The testimony of the arresting officers confirmed that Robinson had two prior felony drug arrests. They testified that on February 20, 1991 and again on November 28, 1991, Robinson was arrested while in possession of distributable amounts of cocaine base.

Robinson claims that this evidence was inadmissible under Federal Rule of Evidence 404(b). This rule "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." Huddleston v. United States, 485 U.S. 681, 685 (1988); see United States v. Wint, 974 F.2d 961, 966 (8th Cir. 1992), cert. denied, 506 U.S. 1062 (1993).

Evidence is admissible under Rule 404(b) if it is relevant to a material issue, involves an act similar in kind and close in time to the charged crime, is proved by a preponderance of the evidence, and if its probative value is not outweighed by its potential for unfair prejudice. See United States v. Mora, 81 F.3d 781, 783 (8th Cir.), cert. denied, 117 S. Ct. 362 (1996). The district court has broad discretion in determining whether to admit or exclude evidence, and we reverse such rulings only for a clear and prejudicial abuse of that discretion. See King v. Ahrens, 16 F.3d 265, 268 (8th Cir. 1994).

Robinson claimed at trial that he was "merely present" at various times during the course of the conspiracy. The challenged

evidence "was relevant to disprove the knowledge and intent issues raised by [Robinson's] defense." United States v. Wiley, 29 F.3d 345, 351 (8th Cir.), cert. denied, 115 S. Ct. 522 (1994); see Wint, 974 F.2d at 967 (noting that testimony about prior drug transactions is admissible to prove that a defendant acted knowingly and intentionally). The disputed evidence involved the same illegal substance and similar illegal behavior as that involved in the charged crime. See Wint, 974 F.2d at 967 (evidence of prior arrest for possession of distributable amount of crack cocaine was sufficiently similar to conspiracy to distribute cocaine). The contested evidence showed that Robinson was arrested on February 21, 1991 and again on November 28, 1991 while in possession of distributable amounts of cocaine base. Although "there is no fixed period within which the prior acts must have occurred," United States v. Baker, 82 F.3d 273, 276 (8th Cir.), cert. denied, 117 S. Ct. 538 (1996), acts committed within three years prior to the charged crime, as is the case here, are sufficiently close in time. See Wint, 974 F.2d at 967 (five years is sufficiently close). The government proved the circumstances regarding Robinson's two previous arrests by a preponderance of the evidence. The arresting officers themselves testified and, from this evidence, the jury could "reasonably conclude that the act[s] occurred and that the defendant was the actor."[2] Huddleston, 485 U.S. at 689. In balancing the danger of unfair prejudice and probative value of other crimes evidence in accordance with Rule 403, the district court's determination is given great deference. See United States v. DeLuna, 763 F.2d 897, 913 (8th Cir.), cert.

---

[2]The appellant's brief misstates the instruction given by the District Court to the jury before the arresting officers testified and maintains that this instruction amounted to a "mandate binding the jury to a conclusive presumption" that Robinson had committed the prior acts. Appellant's Brief at 12. On the contrary, the District Court merely advised the jury that it would hear evidence that Robinson had committed the prior acts and properly left to the jury the determination of whether the government had carried its burden of proving the prior acts by a preponderance of the evidence.

denied, 474 U.S. 980 (1985).  The disputed evidence served directly to rebut Robinson's "mere presence" defense.  See Wiley, 29 F.3d at 351. Moreover, the District Court instructed the jury before the officers testified and again at the conclusion of the trial on the limited purpose for which it could consider this evidence.  See United States v. Marion, 977 F.2d 1284, 1288 (8th Cir. 1992).  We conclude that the evidence regarding Robinson's prior arrests was properly admitted under Rule 404(b).

Robinson advances a related argument that the evidence against him, absent the challenged 404(b) evidence, was insufficient to support his conviction and that the District Court's admission of the evidence concerning his prior arrests was, therefore, more prejudicial than probative.  This argument is flawed on every level.  As we already have observed, the evidence of Robinson's prior drug arrests assisted the government in rebutting his "mere presence" defense.  The evidence was relevant to a disputed issue of fact on which the government had the burden of proof, and the District Court did not abuse its discretion in determining that the evidence's potential for unfair prejudice did not outweigh its probative value.  Moreover, having reviewed the record, we are satisfied that the government's evidence, with or without the 404(b) evidence, is sufficient to support Robinson's conviction.

Robinson's final challenge to the admission of the other crimes evidence alleges that the government went beyond the scope of the notice provided pursuant to Rule 404(b).[3]  Because Robinson failed to raise this issue below, our standard of review is plain error.

_____

[3]Federal Rule of Evidence 404(b) states that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial."

Robinson argues that the notice forewarned him only of the government's intent to introduce the enumerated prior instances of _possession_ of cocaine base, and that the government actually introduced evidence of prior instances of _distribution_ of cocaine base, thus exceeding the scope of the notice and prejudicially affecting the trial. This, according to Robinson, amounts to plain error. We disagree. The advisory committee notes to Rule 404(b) explain that the notice requirement is intended to operate as "a generalized notice provision which requires the prosecution to apprise the defense of the general nature of the evidence of extrinsic acts" in order to "reduce surprise and promote early resolution on the issue of admissibility." Fed. R. Evid. 404 advisory committee's note. The trial court has discretion to reject the evidence if the court finds that the notice is unreasonable due to "lack of . . . completeness." Id.

The notice filed with the District Court and furnished to Robinson provided the necessary information and complied with the notice requirements of Rule 404(b). The notice advised Robinson that the government intended to introduce evidence that he was arrested while in possession of cocaine base on two specific dates. That the government would seek to introduce all the particulars of those arrests, namely, that Robinson was in possession of distributable amounts of cocaine base on both occasions and that he was apprehended in areas notorious for drug trafficking activity, should have come as no surprise to Robinson. This evidence was neither outside the scope of the government's notice nor unreasonable under the standard provided by the advisory committee notes. Furthermore, the District Court conducted a hearing outside the presence of the jury before the officers testified and determined that this evidence was admissible and was encompassed within the government's notice. We agree and conclude that there was no error, plain or otherwise, in admitting this evidence.

Robinson argues that he was prejudiced as a result of statements made by the prosecutor during closing argument.[4] These remarks, according to Robinson, deprived him of a fair trial and resulted in a miscarriage of justice.

Robinson's counsel failed to object to the prosecutor's comments during trial. "If an arguably improper statement made during closing argument is not objected to by defense counsel, this court will only reverse under exceptional circumstances." United States v. Nabors, 761 F.2d 465, 470 (8th Cir.), cert. denied, 474 U.S. 851 (1985); see United States v. Eldridge, 984 F.2d 943, 947 (8th Cir. 1993). Comments made by a prosecutor during closing argument, to which no objection is lodged, are reviewed for plain

---

[4]Robinson calls our attention to the following comments made by the government during its closing argument:

> There is no question that it was a violent group of individuals. There was testimony that they carried guns at various times; that people were shot; this guy was killed during the time frame (indicating). It's a rough, tough, mean, violent business and these are the people that did that. But the defendant was their friend. He was the person they hung around with. He hung around with them. You may not condone their life-style, or what they are doing, and obviously you don't, but this is who he runs with, all of these (indicating).

Tr. at 365. Robinson also challenges the following comments made during the government's rebuttal closing argument:

> [Defense counsel] would have you believe that the defendant was here in Omaha with a few of his friends for a good time in December of 1993. I submit to you that's incredible. Look at Mr. Robinson's situation. He dealt crack before he came. He dealt crack after he went home. He has no job and he hangs around with everyone that is rocking up crack cocaine, bringing it out to Omaha, and he just happens to be out here when they bring it.

Tr. at 381-82.

error.  See Feingold v. United States, 49 F.3d 437, 439 (8th Cir. 1995); United States v. McMurray, 20 F.3d 831, 834 (8th Cir. 1994).  Robinson is entitled to relief only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.  See Olano, 507 U.S. at 736.

We do not detect the plain error required to warrant reversal of Robinson's conviction.  The District Court instructed the jury before closing arguments began that the statements of counsel are not evidence.  See Nabors, 761 F.2d at 470.  These instructions served to alleviate any risk of prejudicial impact.  Moreover, the remarks regarding the violent nature of the conspirators were merely a summary of the testimony introduced during trial.  A number of the conspirators testified to possessing firearms during the course of the conspiracy, and the prosecutor did not suggest that Robinson had carried a weapon.  Thomas Cotton testified that he was shot during an attempt to obtain cocaine, and Brian Duke testified to threatening and robbing an individual to obtain the first batch of cocaine that was eventually transported to Omaha.

The comments regarding Robinson's previous arrests while in possession of cocaine base and his lack of gainful employment were likewise based on evidence presented at trial.  Moreover, these remarks were made during the prosecutor's rebuttal closing argument and were in direct response to defense counsel's attempt during his closing argument to portray Robinson as an innocent victim and to advance his "mere presence" defense.

Robinson calls our attention to United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir. 1996), wherein defense counsel objected to the prosecutor's reference to the defendants as "bad people." Applying an abuse of discretion standard, this Court found that the remarks, as well as the prosecutor's attempt to play on the jury's "parochial allegiances," were improper and the District Court's failure to take curative action was an abuse of discretion.  Id.

Cannon is readily distinguishable from the present case. Here, the prosecutor did not attach a label to Robinson or express an opinion as to his character. Rather, she referred to the violent nature of the participants in this conspiracy--references that were supported by the testimony of the conspirators themselves--and to Robinson's prior involvement with cocaine base--a reference that also was supported by the evidence.

Moreover, the present case differs from Cannon in that Robinson's defense counsel lodged no objection to the prosecutor's comments. Therefore, our review is only for plain error. As suggested above, we fail to see anything in the prosecutor's remarks that amounts to plain error. Indeed, we have difficulty in discerning any impropriety at all in the prosecutor's remarks. So long as prosecutors do not stray from the evidence and the reasonable inferences that may be drawn from it, they, no less than defense counsel, are free to use colorful and forceful language in their arguments to the jury. Robinson's attack on the prosecutor's remarks, therefore, must fail under any standard of review.

## VI.

Finally, we consider Robinson's arguments regarding his sentence. During Robinson's sentencing hearing, the government presented evidence in support of Robinson's prior felony drug convictions for sentence enhancement purposes. The District Court, relying on the presentence report prepared after Robinson's trial, attributed eighty-three ounces of cocaine base to Robinson and, because he had been twice convicted on felony drug charges, sentenced Robinson to life imprisonment as required by 21 U.S.C. § 841(b)(1)(A) (1994).

Robinson first argues that the government failed timely to file its information regarding the prior convictions under 21

U.S.C. § 851(a)(1),[5] a prerequisite for sentence enhancement under 21 U.S.C. § 841(b) (1994).  See Neary v. United States, 998 F.2d 563, 565 (8th Cir. 1993).  The government's failure to file the information before his trial began, according to Robinson, requires that his conviction be vacated.  We find this argument to be without merit.

We have held that, for purposes of section 851, the government must file its information before jury selection begins, thus allowing the defendant "ample time to determine whether he should enter a plea or go to trial, and to plan his trial strategy with full knowledge of the consequences of a potential guilty verdict."  United States v. Johnson, 944 F.2d 396, 407 (8th Cir. 1991), cert. denied, 502 U.S. 1008 (1991), 502 U.S. 1078 (1992), 504 U.S. 977 (1992).  The record indicates that the District Court, beginning at 1:40 p.m. on October 10, 1995, conducted a pre-trial hearing to determine the admissibility of the Rule 404(b) evidence concerning Robinson's prior arrests.  After this hearing, which lasted only a few minutes, the prosecutor requested a short recess to file the information, which was granted.  Only after the information was filed at 1:46 p.m. were the proceedings resumed and the pool of potential jurors brought into the courtroom for voir dire.  It is clear from the record that the government filed its information before the jury selection process began.  We conclude, therefore, that the government complied with § 851(a)(1) and that the District Court did not err in relying on Robinson's prior felony drug convictions to enhance his sentence under § 841(b)(1)(A).

_____

[5]Section 851(a)(1) provides:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial . . . the United States attorney files an information with the court (and serves a copy on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

Robinson next claims there was insufficient evidence for the District Court to attribute to him fifty or more grams of cocaine base for sentencing purposes.[6] The Presentence Investigation Report (PSR) indicates that the conspirators were responsible for transporting a total of 7.5 kilograms of cocaine base into Omaha. The PSR concludes, however, that Robinson personally assisted in the manufacture and delivery of eighty-three ounces (2.35 kilograms) of the total amount of cocaine base. Because Robinson was facing life imprisonment whether eighty-three ounces or 7.5 kilograms of cocaine base were attributed to him, the PSR recommended attributing to Robinson eighty-three ounces of cocaine base. Robinson failed to object to any of the findings in the PSR. As a result, the District Court adopted the PSR and the facts set forth therein as its findings of fact for sentencing purposes. Absent an objection to the drug-quantity finding recommended by the PSR, the District Court was not required to hold an evidentiary hearing into the quantity of drugs attributable to Robinson. See United States v. Goodwin, 72 F.3d 88, 90 (8th Cir. 1995).

Furthermore, even if Robinson had objected to the drug quantity attributed to him in the PSR, it is apparent that the evidence presented at trial is sufficient to support a finding that Robinson was responsible for at least eighty-three ounces of cocaine base. "A district court's determination of drug quantity is reviewed for clear error." United States v. Smith, 49 F.3d 362, 365 (8th Cir.), cert. denied, 115 S. Ct. 2009, 115 S. Ct. 2264 (1995). Given the trial testimony of Robinson's coconspirators that Robinson personally assisted them in "rocking up" eighty-three ounces of cocaine base and packaging it for delivery to Omaha, we

---

[6]If fifty grams or more of cocaine base are attributed to Robinson, then because of his two prior felony drug convictions he is subject to mandatory life imprisonment under 21 U.S.C. § 841(b)(1)(A)(iii) (1994). However, if less than that amount of cocaine base is attributed to Robinson, he is not subject to mandatory life imprisonment. See 21 U.S.C. § 841(b)(1)(B).

cannot say the District Court committed clear error in attributing eighty-three ounces of cocaine base to Robinson for sentencing purposes.

We find Robinson's remaining arguments, which challenge the constitutionality of his sentence enhancement, to be entirely without merit, and we decline to address them further.

**VII.**

The judgment of the District Court is affirmed.

HEANEY, Circuit Judge, concurring.

I write separately to express my dismay about the result in this case. Clarence Robinson, a young black man, was a small player in a large cocaine conspiracy. He was brought into the enterprise late in the game by a long-time friend who was one of the leaders of the enterprise. There is no evidence that Robinson distributed any drugs,and although the cocaine base attributable to the conspiracy had a street value of approximately $150,000, Robinson pocketed only $1,000 for his small role. Because Robinson had two prior felony convictions for drug possession and because those convictions were noticed by the government prior to trial, Robinson will serve a mandatory life sentence for his crime. None of the other members of this conspiracy--including the three leaders--were sentenced to longer than 120 months in prison.

At sentencing, the district court's hands were tied. Despite the court's statement that it was "disturbed" about its lack of discretion and that it thought the sentence was unjust, a life sentence without possibility of parole was mandatory for Robinson under 21 U.S.C. § 841(b)(1)(A)(iii). Congress has clearly elected to eschew individualized sentencing for repeat drug offenders in favor of a draconian approach that is unmistakably tough on crime.

I am aware that our circuit has held the three-strikes scheme constitutional. <u>United States v. Prior</u>, 1997 WL 80253 at *3-4 (8th Cir. Feb. 27, 1997); <u>see</u> <u>also</u> <u>United States v. Farmer</u>, 73 F.3d 836 (8th Cir. 1996) (rejecting double jeopardy and ex post facto challenges to 18 U.S.C. § 359(c), which imposes mandatory life sentence for persons convicted of three or more specified "serious violent crimes"), <u>cert. denied</u>, 116 S. Ct. 2570 (1996). I fear, however, that fairness is too often sacrificed in the process.

Any sentencing discretion in this case rested with the prosecution, not the court. First, if the government had not elected before trial to file with the court a written notice of Robinson's prior convictions as required under 21 U.S.C. § 851, the court could not have imposed the statutory enhancement. Barring the government's failure to give notice, the only possible way Robinson could have avoided a life sentence after his conviction would have been if the government moved for a downward departure based on his substantial assistance. <u>See</u> <u>United States v. Prior</u>, 1997 WL 80253 at *4 (8th Cir. Feb. 27, 1997). Here, where Robinson would not admit to being part of a large drug conspiracy, putting the government to its proof may have literally cost him his life. One of Robinson's co-defendants, who also faced a mandatory life sentence under section 841(b), chose instead to cooperate with the government. Based on the government's request for a sentencing departure, the co-defendant received only a 120-month sentence notwithstanding that he was undeniably one of the leaders in the operation. The contrast between that punishment and Robinson's, in light of the relative culpability, is unconscionable.

Unfortunately, Congress has taken away the court's ability to use its informed discretion in these matters, placing any discretion instead in the prosecution. Under existing law, one can only hope that prosecutors will use that discretion wisely.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.