UNITED STATES of America, Appellee,

v.

Juan Ramon MARTINEZ, Appellant.

No. 91–3320.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1992.

Decided Feb. 28, 1992.

Jon Baptiste Schuster, Des Moines, Iowa, argued, for appellant.

Ronald Michael Kayser, Des Moines, Iowa, argued (Gene W. Shepard and Ronald M. Kayser, on brief), for appellee.

Before ARNOLD, Chief Judge,
MAGILL, Circuit Judge, and LARSON,*
Senior District Judge.

ARNOLD, Chief Judge.

Juan Ramon Martinez appeals his convictions for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and the use and carrying of a firearm during the commission of a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1). Martinez argues that the evidence presented at trial was insufficient to support his convictions on all three counts. We affirm the convictions.

## I.

Evidence at trial established that Martinez had known the government's informant, Joe Navin, since January or February of 1990, and had sold cocaine to Navin ten to twelve times before November 1990. Navin was arrested on November 14, 1990, on cocaine possession and gun charges. He immediately indicated to law-enforcement personnel that he wanted to cooperate. In cooperation with the government, Navin set up a meeting with Martinez for him and Agent Weir to buy cocaine. Martinez agreed to call Navin at the Holiday Inn when the cocaine was available. On the evening of December 9, 1990, Martinez called Navin at the hotel and told him to come over to Martinez's apartment for the purchase in twenty to twenty-five minutes. The government taped the telephone conversation.

When Agent Weir and Navin arrived at Martinez's apartment, Martinez led them to the apartment of co-defendants Humberto Carlin and Jose Velazquez. Agent Weir was wearing a recording device. During the meeting, Carlin brought out eight ounces of cocaine in eight individual packets and showed it to Agent Weir and Navin. Navin noticed that Carlin was carrying a gun. Martinez and Agent Weir began to negotiate. Martinez told Agent Weir that the cocaine was "primo" and would cost $1,250 an ounce. After discussing the purchase a while longer, Martinez told Agent Weir that he had promised Carlin a sixteenth of an ounce of cocaine for handling the transaction. Agent Weir offered Martinez a $200 bonus in lieu of Carlin's taking any of the cocaine and handed Martinez $200. Martinez kept a $100 bill and gave $100 to Carlin. Agent Weir and Navin then paid $4,800 each for the cocaine and left the apartment.

Shortly after Navin and Agent Weir left the apartment, they re-entered with law-enforcement officers and arrested Martinez. He still had the $100 bill. Carlin attempted to escape, and in doing so, a gun fell out of his pants. It was this gun which the jury convicted Martinez of using and carrying during the commission of the drug-trafficking offenses.

## II.

First, Martinez argues that Navin's testimony—i.e., the testimony of a drug dealer who struck a deal with the government—was directly contradicted by Martinez and therefore insufficient to support the convictions.

The jury was aware of Navin's cooperation with the government, of the potential for a reduction of his sentence in exchange for his assistance, and of his extensive criminal record. They were free to give whatever weight they chose to his testimony. It is the sole province of the jury to weigh the credibility of a witness. Had Navin's testimony been the only evidence presented by the government, it would still have been perfectly proper for the jury to credit this testimony and convict Martinez on all three counts. This was not, how-

* The Hon. Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

ever, the only evidence presented on Martinez's guilt. Navin's testimony was fully corroborated by Agent Weir, the tape of the telephone conversation, and the tape of the negotiations in Carlin's and Velazquez's apartment. Thus, we hold that a reasonable juror could have found guilt beyond a reasonable doubt.

■ Martinez's second argument is that the evidence was insufficient as a matter of law to support his conviction on possession of a firearm since another individual was in possession of the weapon. In *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), the Supreme Court held that a party to a conspiracy may be responsible for the substantive offense of a co-conspirator "when the substantive offense is committed by one of the conspirators in furtherance of the [conspiracy]." This is true even though the party has no actual knowledge of the offense as long as it could be "reasonably foreseen as a necessary or natural consequence of the [conspiracy]." *Id.* at 648, 66 S.Ct. at 1184.

Certainly, it was reasonably foreseeable that one of Martinez's co-conspirators might carry a weapon in a transaction involving $9,600 worth of cocaine. Moreover, while Martinez might not have known that Carlin had a gun on this particular occasion, Martinez admitted that he himself had carried a loaded gun when he was trafficking marijuana in 1986. The jury could have concluded from this admission that he was aware of the possibility that a weapon might be involved. The evidence was sufficient to convict Martinez of the firearm charge. Carlin's carrying the gun in furtherance of the conspiracy to sell cocaine was reasonably foreseeable as a natural consequence of the conspiracy.

We affirm Martinez's convictions on all three counts.