WELCH, Judge.
On November 29, 2007, B.J.C. was adjudicated delinquent after pleading guilty to the underlying charge of carrying a concealed weapon, a violation of § 13A-11-73, Ala.Code 1975. Before entering his guilty plea, B.J.C. reserved the right to appeal the trial court’s denial of his motion to suppress.
At the suppression hearing, Tarrant Police Officer James Phillip George, Jr., testified that at approximately 3:15 p.m. on November 1, 2007, he received a dispatch in reference to “a black male wearing a sleeveless Chicago Bulls basketball jersey, khaki pants, and a black hat [and] carrying a firearm ... [i]n the 1400 block of Sloan Avenue.” (R. 6.) Apparently, the dispatch was the result of an anonymous caller reporting this information to the police. Officer George went to the 1400 block of Sloan Avenue, where he saw a person walking down the street who matched the description provided by the anonymous caller. Officer George passed the individual, stopped his patrol car, got out of the car, and drew his weapon. Officer George ordered B.J.C. to the ground. B.J.C. hesitated for a moment but then complied. Once B.J.C. was on the ground, Officer George “put [his] knees across the back of [B.J.C.’s] thighs to keep him from being able to get up, started to pat down the back of his pants and he ... asked me what I was doing. I said, ‘Where’s the gun.’ ” (R. 7-8.) At first, B.J.C. denied having a gun, but he finally told Officer George that he had a gun in his back *91 pocket. After removing a small handgun from B.J.C’s back pocket, Officer George turned B.J.C. over onto his back, at which time B.J.C. told George that he had another gun in his front waistband which George recovered.
At the hearing, defense counsel argued that the circumstances surrounding the stop were identical to the facts of Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and that the trial court should grant the motion to suppress based on the United States Supreme Court’s ruling in that case. The trial court took the matter under advisement and subsequently denied the motion.
On appeal, B.J.C. argues that the trial court erroneously denied his motion to suppress. The State agrees, stating that the instant case is indistinguishable from the United States Supreme Court’s decision in J.L.
“When an appellate court reviews the findings and holdings of a trial court resulting from a hearing on a motion to suppress evidence, if the evidence before the trial court was undisputed, the ‘ore tenus rule,’ pursuant to which the trial court’s conclusions on issues of fact are presumed correct, is inapplicable, and the reviewing court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.”
Ex parte Kelley, 870 So.2d 711, 714 (Ala.2003).
In J.L., an anonymous caller reported to the police that a young black male was at a particular bus stop wearing a plaid shirt and that he was carrying a gun. Officers went to the bus stop, where they saw three black males. One of the males, J.L., was wearing a plaid shirt. The officers stopped and frisked the males. A gun was seized from J.L.’s pocket. The United States Supreme Court held that an anonymous tip that a person is carrying a gun is not, without more, sufficient to justify a police officer’s stop and frisk of that person.
“Our ‘stop and frisk’ decisions begin with Terry v. Ohio, 392 U.S. 1 (1968). This Court held in Terry:
“ ‘[Wjhere a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.’ Id., at 30.
“In the instant case, the officers’ suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see Adams v. Williams, 407 U.S. 143, 146-147 (1972), ‘an anonymous tip alone seldom demonstrates the informant’s basis of knowledge or veracity,’ Alabama v. White, 496 U.S. [325], at 329 [ (1990) ]. As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits ‘sufficient indicia of reliability to provide reasonable suspicion to make the investiga *92 tory stop.’ Id., at 327. The question we here confront is whether the tip pointing to J.L. had those indicia of reliability.
“In White, the police received an anonymous tip asserting that a woman was carrying cocaine and predicting that she would leave an apartment building at a specified time, get into a car matching a particular description, and drive to a named motel. Ibid. Standing alone, the tip would not have justified a Terry stop. 496 U.S., at 329. Only after police observation showed that the informant had accurately predicted the woman’s movements, we explained, did it become reasonable to think the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine. Id., at 332. Although the Court held that the suspicion in White became reasonable after police surveillance, we regarded the case as borderline. Knowledge about a person’s future movements indicates some familiarity with that person’s affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband. We accordingly classified White as a ‘close case.’ Ibid.
“The tip in the instant case lacked the moderate indicia of reliability present in White and essential to the Court’s decision in that case. The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant’s knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If White was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.
“Florida contends that the tip was reliable because its description of the suspect’s visible attributes proved accurate: There really was a young black male wearing a plaid shirt at the bus stop. Brief for Petitioner 20-21. The United States as amicus curiae makes a similar argument, proposing that a stop and frisk should be permitted ‘when (1) an anonymous tip provides a description of a particular person at a particular location illegally carrying a concealed firearm, (2) police promptly verify the pertinent details of the tip except the existence of the firearm, and (3) there are no factors that cast doubt on the reliability of the tip.... ’ Brief for United States 16. These contentions misapprehend the reliability needed for a tip to justify a Terry stop.
“An accurate description of a subject’s readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. Cf. 4 W. LaFave, Search and Seizure § 9.4(h), p. 213 (3d ed.1996) (distinguishing reliability as to identification, which is often important in other criminal law contexts, from reliability as to the likeli *93 hood of criminal activity, which is central in anonymous-tip cases).
“A second major argument advanced by Florida and the United States as amicus is, in essence, that the standard Terry analysis should be modified to license a ‘firearm exception.’ Under such an exception, a tip alleging an illegal gun would justify a stop and frisk even if the accusation would fail standard pre-search reliability testing. We decline to adopt this position.
“Firearms are dangerous, and extraordinary dangers sometimes justify unusual precautions. Our decisions recognize the serious threat that armed criminals pose to public safety; Terry’s rule, which permits protective police searches on the basis of reasonable suspicion rather than demanding that officers meet the higher standard of probable cause, responds to this very concern. See 392 U.S., at 30. But an automatic firearm exception to our established reliability analysis would rove too far. Such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target’s unlawful carriage of a gun. Nor could one securely confine such an exception to allegations involving firearms. Several Courts of Appeals have held it per se foreseeable for people carrying significant amounts of illegal drugs to be carrying guns as well. See, e.g., United States v. Sakyi, 160 F.3d 164, 169 (C.A.4 1998); United States v. Dean, 59 F.3d 1479, 1490, n. 20 (C.A.5 1995); United States v. Odom, 13 F.3d 949, 959 (C.A.6 1994); United States v. Martinez, 958 F.2d 217, 219 (C.A.8 1992). If police officers may properly conduct Terry frisks on the basis of bare-boned tips about guns, it would be reasonable to maintain under the above-cited decisions that the police should similarly have discretion to frisk based on bare-boned tips about narcotics. As we clarified when we made indi-cia of reliability critical in Adams and White, the Fourth Amendment is not so easily satisfied. Cf. Richards v. Wisconsin, 520 U.S. 385, 393-394 (1997) (rejecting a per se exception to the ‘knock and announce’ rule for narcotics cases partly because ‘the reasons for creating an exception in one category [of Fourth Amendment cases] can, relatively easily, be applied to others,’ thus allowing the exception to swallow the rule).
“The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk. Nor do we hold that public safety officials in quarters where the reasonable expectation of Fourth Amendment privacy is diminished, such as airports, see Florida v. Rodriguez, 469 U.S. 1 (1984) (per curiam), and schools, see New Jersey v. T.L.O., 469 U.S. 325 (1985), cannot conduct protective searches on the basis of information insufficient to justify searches elsewhere.
“Finally, the requirement that an anonymous tip bear standard indicia of reliability in order to justify a stop in no way diminishes a police officer’s prerogative, in accord with Terry, to conduct a protective search of a person who has already been legitimately stopped. We speak in today’s decision only of cases in which the officer’s authority to make the initial stop is at issue. In that context, *94 we hold that an anonymous tip lacking indicia of reliability of the kind contemplated in Adams and White does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm.”
Florida v. J.L., 529 U.S. at 269-74, 120 S.Ct. 1375(footnote omitted).
We agree with the parties that the factual situation in the present case is almost identical to the factual situation in J.L. Based on the authority of Florida v. J.L., supra, we hold that Officer George was not justified in the stop and frisk of B.J.C. Therefore, the trial court erred in denying B.J.C.’s motion to suppress the evidence seized from B.J.C.’s person.
For the reasons set forth above, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BASCHAB, P.J., and McMILLAN, SHAW, and WISE, JJ., concur.