WISE, Presiding Judge.
The appellant, C.D.M., entered a guilty plea and was adjudicated delinquent based on the underlying charges of carrying a pistol without a license, a violation of § 13A-ll-73(a)(l), Ala.Code 1975, and unlawful possession of marijuana, a violation of § 13A-12-214, Ala. Code 1975. The juvenile court ordered him to complete gun court and to spend fourteen days in detention followed by electronic monitoring. C.D.M. did not file any post-judgment motions. This appeal followed.
During the suppression hearing, Officer Justin Rossomme testified that, around 5:00 p.m. on May 21, 2010, he received a call from dispatch; that it was a “signal 52” call, which is a call involving a firearm; that dispatch told him that, at 305 Lawson Road, there was a black male wearing dark jeans and a short-sleeved polo shirt that looked like a school uniform shirt; that dispatch told him that the male was seen walking into an abandoned house and that the caller then heard gunfire from inside of the house; that he was about two minutes away from that location and responded to the call; that, when he and his partner approached the location, he saw C.D.M. walking down Lawson Road; that C.D.M.’s clothing matched the description of the subject in the call; that C.D.M. was between one and two blocks from the address given by the caller; and that there was not anyone else on Lawson Road at that time. He also testified that he and his partner pulled over, and he got out of their vehicle; that they “were going to conduct a field interview to find out either ... if he was the person that was involved *1286 in that call, or if he had known anything about the call, if he had heard gunshots, if he had seen someone matching the description like that”; that they asked C.D.M. if he had any weapons, and he said, “No”; that they patted down C.D.M. for officer safety; and that, during the pat-down, they found a pistol. (R. 10, 11.) Finally, Rossomme testified that he did not receive any information from dispatch regarding the identity of the caller.
C.D.M. argues that the juvenile court erroneously denied his motion to suppress the pistol and marijuana law enforcement officers seized from his person. Specifically, he contends that the juvenile court should have suppressed the pistol because the officers did not have reasonable suspicion to believe that he was armed and dangerous when they conducted the pat-down search. Relying on the United States Supreme Court’s decision in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and this court’s decision in B.J.C. v. State, 992 So.2d 90 (Ala.Crim.App.2008), he asserts that the anonymous call in this case did not justify the patdown search because it did not include any predictive information; because the officers could have possibly corroborated the information that a gun had been fired inside the abandoned house, but did not; and because the officers corroborated only his “‘readily observable location and appearance.’ ” (C.D.M.’s brief at p. 12.)
In J.L., law enforcement authorities received an anonymous tip stating that a young black male wearing a plaid shirt was carrying a gun and was at a particular bus stop. The facts in that case indicated that officers went to the bus stop and saw three black males; that J.L. was at the bus stop and was wearing a plaid shirt; and that, at that time, the officers approached the three black males, frisked them, and found a gun in J.L.’s pocket. The United States Supreme Court addressed the issue of whether law enforcement officers were justified in stopping and frisking J.L. based on the anonymous tip as follows:
“Our ‘stop and frisk’ decisions begin with Terry v. Ohio, 392 U.S. 1 (1968). This Court held in Terry:
“ ‘[Wjhere a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others’ safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.’ Id., at 30.
“In the instant case, the officers’ suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see Adams v. Williams, 407 U.S. 143, 146-147 (1972), ‘an anonymous tip alone seldom demonstrates the informant’s basis of knowledge or veracity,’ Alabama v. White, 496 U.S. [325], at 329 [ (1990) ]. As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits ‘sufficient indicia of reliability to provide reasonable suspicion to make the investiga *1287 tory stop.’ Id., at 327. The question we here confront is whether the tip pointing to J.L. had those indicia of reliability.
“In White, the police received an anonymous tip asserting that a woman was carrying cocaine and predicting that she would leave an apartment building at a specified time, get into a car matching a particular description, and drive to a named motel. Ibid. Standing alone, the tip would not have justified a Terry stop. 496 U.S., at 329. Only after police observation showed that the informant had accurately predicted the woman’s movements, we explained, did it become reasonable to think the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine. Id., at 332. Although the Court held that the suspicion in White became reasonable after police surveillance, we regarded the case as borderline. Knowledge about a person’s future movements indicates some familiarity with that person’s affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband. We accordingly classified White as a ‘close case.’ Ibid.
“The tip in the instant case lacked the moderate indicia of reliability present in White and essential to the Court’s decision in that case. The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant’s knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If White was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.
“Florida contends that the tip was reliable because its description of the suspect’s visible attributes proved accurate: There really was a young black male wearing a plaid shirt at the bus stop. Brief for Petitioner 20-21. The United States as amicus curiae makes a similar argument, proposing that a stop and frisk should be permitted ‘when (1) an anonymous tip provides a description of a particular person at a particular location illegally carrying a concealed firearm, (2) police promptly verify the pertinent details of the tip except the existence of the firearm, and (3) there are no factors that cast doubt on the reliability of the tip.... ’ Brief for United States 16. These contentions misapprehend the reliability needed for a tip to justify a Terry stop.
“An accurate description of a subject’s readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. Cf. 4 W. LaFave, Search and Seizure § 9.4(h), p. 213 (3d ed. 1996) (distinguishing reliability as to identification, which is often important in other criminal law contexts, from reliability as to *1288 the likelihood of criminal activity, which is central in anonymous-tip cases).
“A second major argument advanced by Florida and the United States as amicus is, in essence, that the standard Terry analysis should be modified to license a ‘firearm exception.’ Under such an exception, a tip alleging an illegal gun would justify a stop and frisk even if the accusation would fail standard pre-search reliability testing. We decline to adopt this position.
“Firearms are dangerous, and extraordinary dangers sometimes justify unusual precautions. Our decisions recognize the serious threat that armed criminals pose to public safety; Terry’s rule, which permits protective police searches on the basis of reasonable suspicion rather than demanding that officers meet the higher standard of probable cause, responds to this very concern. See 392 U.S., at 30. But an automatic firearm exception to our established reliability analysis would rove too far. Such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target’s unlawful carriage of a gun. Nor could one securely confine such an exception to allegations involving firearms. Several Courts of Appeals have held it per se foreseeable for people carrying significant amounts of illegal drugs to be carrying guns as well. See, e.g., United States v. Sakyi, 160 F.3d 164, 169 (C.A.4 1998); United States v. Dean, 59 F.3d 1479, 1490, n. 20 (C.A.5 1995); United States v. Odom, 13 F.3d 949, 959 (C.A.6 1994); United States v. Martinez, 958 F.2d 217, 219 (C.A.8 1992). If police officers may properly conduct Terry frisks on the basis of bare-boned tips about guns, it would be reasonable to maintain under the above-cited decisions that the police should similarly have discretion to frisk based on bare-boned tips about narcotics. As we clarified when we made indicia of reliability critical in Adams and White, the Fourth Amendment is not so easily satisfied. Cf. Richards v. Wisconsin, 520 U.S. 385, 393-394 (1997) (rejecting a per se exception to the ‘knock and announce’ rule for narcotics cases partly because ‘the reasons for creating an exception in one category [of Fourth Amendment cases] can, relatively easily, be applied to others,’ thus allowing the exception to swallow the rule).
“The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk. Nor do we hold that public safety officials in quarters where the reasonable expectation of Fourth Amendment privacy is diminished, such as airports, see Florida v. Rodriguez, 469 U.S. 1 (1984) (per curiam), and schools, see New Jersey v. T.L.O., 469 U.S. 325 (1985), cannot conduct protective searches on the basis of information insufficient to justify searches elsewhere.
“Finally, the requirement that an anonymous tip bear standard indicia of reliability in order to justify a stop in no way diminishes a police officer’s prerogative, in accord with Terry, to conduct a protective search of a person who has already been legitimately stopped. We speak in today’s decision only of cases in which the officer’s authority to make the initial stop is at issue. In that context, *1289 we hold that an anonymous tip lacking indicia of reliability of the kind contemplated in Adams and White does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm.”
J.L., 529 U.S. at 269-74, 120 S.Ct. at 1378-1380 (footnote omitted).
In B.J.C., law enforcement officers received an anonymous tip that there was “ ‘a black male wearing a sleeveless Chicago Bulls basketball jersey, khaki pants, and a black hat carrying a firearm ... [i]n the 1400 block of Sloan Avenue.’ ” 992 So.2d at 90. The facts indicated that an officer responded to the area; that the officer saw B.J.C. walking down the street; that B.J.C. matched the description provided by the anonymous caller; that the officer stopped his patrol vehicle, got out, drew his weapon, and ordered B.J.C. to the ground; that the officer started patting down B.J.C.; that, while he was patting down B.J.C., the officer asked him where the weapon was located; that B.J.C. initially denied having a gun, but later told the officer there was a gun in his back pocket; that the officer recovered the gun and turned B.J.C. onto his back; and that, at that time, B.J.C. told the officer he had another gun in his waistband. This court found that the factual situation in B.J.C. was almost identical to the fact situation in J.L. and held that the officer was not justified in stopping and conducting a pat-down search of B.J.C.
The facts in the present case are virtually indistinguishable from J.L. and B.J.C. Rossomme testified that he did not receive any information from dispatch regarding the identity of the caller. Also, the State did not present any evidence that the information was not based on an anonymous tip and did not present any evidence that the tip had any indicia of reliability. Further, the only information from the call that officers corroborated was the readily ascertainable fact concerning the clothing worn by C.D.M. and the fact that C.D.M. was only a short distance away from the abandoned house. The officers did not make any attempt to corroborate whether someone had in fact entered the abandoned residence or whether shots had actually been fired in or around the residence. Finally, the tip did not include any predictive information that the officers could have used to test the caller’s credibility or knowledge. Based on the holdings in J.L. and B.J.C., we hold that the officers were not justified in stopping and patting down C.D.M. Accordingly, we reverse the trial court’s judgment and remand this case for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.